**Randy JONES, Plaintiff,**

v.

**DEPARTMENT OF HEALTH AND HUMAN SERVICES, Defendant.**

No. 85 C 6827.

United States District Court,
N.D. Illinois, E.D.

Nov. 22, 1985.

Chanon Williams, Chicago, Ill., for plaintiff.

Elizabeth Stein, Asst. U.S. Atty., Chicago, Ill., for defendant.

MEMORANDUM OPINION
AND ORDER

SHADUR, District Judge.

Randy Jones ("Jones") has sued to challenge his removal from his position as a Records Analysis Clerk at the federal government's Great Lakes Program Service Center in Chicago. In response the

government has moved to dismiss for lack of subject matter jurisdiction, supplementing its supporting memorandum with affidavits and other exhibits. Jones' responsive memorandum (also including affidavits and exhibits) does not meet the government's contentions, and the motion is granted.

There is more than one ground for such dismissal,[1] but only the most fundamental need be addressed. Because this is an action against the United States, a government employee claiming discrimination must bring himself strictly within the terms defined by the sovereign in granting the right to sue. *Sims v. Heckler*, 725 F.2d 1143, 1145 (7th Cir.1984), affirming this Court's decision to precisely that effect, 547 F.Supp. 752, 755–56 (N.D.Ill.1982). That rule draws upon the long-familiar proposition that "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Lehman v. Nakshian*, 453 U.S. 156, 161, 101 S.Ct. 2698, 2702, 69 L.Ed.2d 548 (1981), quoting *Soriano v. United States*, 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957).

In this instance the applicable statute, 5 U.S.C. § 7121(d) (emphasis and bracketed inserts added),[2] establishes alternative tracks for an aggrieved employee—but it specifically makes the election chosen by the employee irrevocable:

> An aggrieved employee affected by a prohibited personnel practice under section 2302(b)(1) of this title[3] which also falls under the coverage of the negotiated grievance procedure may raise the matter under a statutory procedure *or*

the negotiated procedure, *but not both. An employee shall be deemed to have exercised his option* under this subsection to raise the matter under either a statutory procedure or the negotiated procedure *at such time as the employee timely initiates an action under the applicable statutory procedure or timely files a grievance in writing, in accordance with the provisions of the parties' negotiated grievance procedure, whichever event occurs first.* Selection of the negotiated procedure in no manner prejudices the right of the aggrieved employee to request the Merit Systems Protection Board ["MSPB"] to review the final decision pursuant to section 7702 of this title in the case of any personnel action that could have been appealed to the Board, or, where applicable, to request the Equal Employment Opportunity Commission ["EEOC"] to review a final decision in any other matter involving a complaint of discrimination of the type prohibited by any law administered by the Equal Employment Opportunity Commission.

Indeed the United States did not leave Jones' knowledge of his rights to chance, for the lengthy and specific February 4, 1985 letter advising Jones of the removal decision (the "Letter," Appendix 1 to this opinion) clearly identified the alternative appeal procedures and made plain their mutual exclusivity:

> If you wish to appeal this action, you have the option of either appealing in writing to the Merit Systems Protection Board (MSPB), or filing a written grievance at Stage 3 of the negotiated procedure. You may not use both procedures. To be considered, an appeal or grievance

---

1. For example, despite the plain language of 42 U.S.C. § 2000e–16(c) requiring the defendant in a federal employment discrimination lawsuit to be the agency head, Jones' lawyer named the agency itself—Department of Health and Human Services ("HHS"). That alone would require dismissal of this action. *McGuinness v. United States Postal Service*, 744 F.2d 1318, 1322 (7th Cir.1984).

2. All further references to the statutes within Title 5 will simply take the form "Section—."

3. [Footnote by this Court] Another portion of that section (Section 2302(b)(1)) prohibits, among other conduct, discrimination on the basis of race, color, religion, national origin, sex or "handicapping condition." Jones' grievance asserted discrimination on the basis of sex (male), race and color (black) and handicap (hearing).

must be initiated within 20 calendar days after the effective date of this action. Both procedures allow you to raise any issue, including discrimination. You shall be deemed to have exercised your option at such time as you timely initiate an appeal or grievance under one of these procedures. The choice is irrevocable.

Then the Letter went on to detail not only those appeal procedures but also the other possible route of a formal discrimination complaint:

An appeal to the MSPB containing an allegation of discrimination (as defined in MSPB Regulations 1201.151(a)(2) ) will not be processed concurrently with a discrimination complaint filed within the Department of Health and Human Services. Accordingly, if you believe that this action is based on such discrimination, you may:

1. Either appeal to the MSPB within 20 calendar days after the effective date of the action taken against you, raising the matter of discrimination in your appeal, (and otherwise complying with MSPB Regulations 1201.153), or

2. File a discrimination complaint within the Department or a grievance under the negotiated procedure; but you must, if you wish to file a discrimination complaint, you may if you wish to file a grievance, first consult an Equal Employment Opportunity (EEO) Counselor within 30 calendar days after you receive the decision. If you decide to file a formal discrimination complaint within the Department or a grievance under the negotiated procedure, you will still have the right to thereafter request the MSPB to review a decision or issue a decision as appropriate:

a. Within 20 calendar days after you receive the Department resolution or final decision on your discrimination complaint or grievance, or

b. Within 1 year after you filed your formal discrimination complaint within the Department when the Department has neither resolved your discrimination complaint nor issued a final decision on your formal discrimination complaint within a period of 120 calendar days.

Should you have any questions concerning your rights or procedures involved, you and/or your representative may contact the Personnel Branch, Employee Relations Section, telephone number 353–1648.

On the very next day after the Letter was written, Jones filed a grievance under the applicable collective bargaining agreement (one of the avenues spelled out by the Letter). His grievance was denied at the prearbitration stage March 8, 1985. No arbitration was then requested by the union. Jones did not file a timely appeal to the MSPB,[4] nor did he bring suit within 30 days after the March 8 grievance denial as 42 U.S.C. § 2000e–16(c) provides (see 5 C.F.R. § 1201.158).[5] Instead he filed a discrimination complaint with HHS, which rejected that complaint on the ground Jones had elected the grievance option. This lawsuit charging discrimination followed.

Jones' lawyer first essays to get out from under the clear statutory bar by arguing the Letter contained "confusing information" (Mem. 2) and "is not clear" (Mem. 3). That is not a fair characterization of the Letter, which did a reasonable job of spelling out the set of different paths available to the aggrieved employee. In fact the Letter's concluding sentence (already quoted) invited inquiry if there were any

---

**4.** Section 7121(d) gives the employee pursuing the grievance route the right to seek MSPB review of both personnel and discrimination claims and then seek Equal Employment Opportunity Commission review of MSPB's final decision on the discrimination allegations. Section 7702 provides for judicial review of any final MSPB decision within 30 days after its receipt.

**5.** *Cornelius v. Nutt,* — U.S. ——, 105 S.Ct. 2882, 2890 n. 16, 86 L.Ed.2d 515 (1985) confirms Congress made arbitration decisions judicially reviewable in precisely the same way and under the same conditions as if MSPB had decided the matter.

questions, and neither Jones nor his representative took up that offer.

What Jones did do instead was to enlist the aid of a union representative, who communicated with an Equal Employment Opportunity ("EEO") Counselor on February 5 to set up an appointment for the next day (as the Letter indicated, consultation with such a Counselor was a *permissible* step in the course of a grievance or a *necessary* step en route to a complaint of discrimination—hence it was a neutral act in terms of any election of remedies [6]). But on the same day the union representative prepared and filed the grievance that, under the law (and as stated in the Letter), closed off the other roads.

It is unfortunate the union representative apparently failed to understand the consequences of that election (though the Letter gave fair warning) and therefore pursued the unavailable other alternative until it was too late. But given concepts of sovereign immunity, this Court cannot relieve Jones of the jurisdictional requirements simply because of such a misunderstanding. And to the extent Jones' Memorandum and the representative's affidavit attempt to portray the EEO Counselor as inadvertently having led them down the garden path, estoppel against the government simply will not lie here. *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984).

In short, the history outlined in this opinion forecloses the present complaint challenging the rejection of the discrimination complaint. And *Sims* precludes review of the March 8 decision rejecting the grievance, because the 30-day filing period for that remedy has elapsed. Subject matter jurisdiction is therefore lacking, and this action is dismissed.

---

**6.** That neutrality refutes Jones' argument, at Jones Mem. 3, that consulting the Counselor was somehow an election of the EEO discrimination complaint route, thereby making the following day's pursuit of the grievance procedure

APPENDIX 1

February 4, 1985

Mr. Randy Jones
  through
Mr. Levolia Ellens
AFGE Local 1395
Great Lakes Program Service Center

Dear Mr. Jones:

By means of a letter dated December 10, 1984, Ms. Levita Lee, Manager, Process Module 6, proposed your removal from the Federal service. She proposed that action based on your continued hostile, aggressive, and inappropriate behavior towards other Great Lakes Program Service Center employees. In her December 10, 1984 letter, Ms. Lee informed you of your right to representation and your right to reply to me both orally and in writing within 20 calendar days. On January 10, 1985, I met with you and your representative, Mr. Levolia Ellens, to discuss the proposed removal action. During that meeting, you presented to me two memoranda which served as your written responses. One of these memoranda you prepared personally; the other was composed by Mr. Ellens. Similar arguments were presented in your written and oral replies.

Your January 10, 1985 statement, for example, explains at length your own version of the events of November 28, 1984 as well as your previous relationships with Ms. Hill and Ms. Kupczynski. Although you accuse Ms. Hill of making derogatory and provocative remarks towards you on occasion, you characterize your relationship as a good working relationship. You attribute the disagreement at the CRT machine on November 28, 1984 to Ms. Hill's having called you a "dumb ass" earlier that day. While you acknowledge that you touched Ms. Hill during that incident, you explain that you were only gesturing to communicate that she should stop making such remarks.

a nullity. It will be recalled Section 7121(d) speaks in terms of "whichever event occurs first." In the statutory sense the consultation was not an "event," but filing the grievance was.

With regard to your relationship with Ms. Kupczynski, you describe an incident which occurred outside of GLPSC premises after working hours. A man, who you believed you recognized from a picture on Ms. Kupczynski's desk, accosted you and began to choke you. You deny, however, that you ever harassed Ms. Kupczynski in any way, touched her inappropriately or asked her for dates.

While you acknowledge that you may have said pow-pow and gestured at these two coworkers, you categorically deny that you threatened their lives. You compare your actions to hearing a person making the statement "I'll break your neck" without serious intent to do so. You attribute these charges to misunderstandings resulting from your hearing impairment and the communication difficulties which it provokes.

Finally, you claim that you repeatedly requested both an interpreter and a union representative during your interview with Mr. Conroy on November 28, 1984, but that neither was provided.

In conclusion, you deny that you ever exhibited hostile or inappropriate behavior towards your coworkers. You note that you are a good worker, and ask me to consider your reassignment to the Facilities Management Branch or the Mailroom in lieu of removal.

Mr. Ellens' written memorandum raises many of the same basic issues. Your representative considers management's alleged failure to provide an interpreter or a union representative to be serious violations of your employee rights which render the evidence taken from your November 28, 1984 interview useless. Mr. Ellens also decries many of the charges as vague, general, and unsupported by facts. He objects to the way in which the investigation was conducted. Finally, Mr. Ellens cites the fact that management did not immediately remove you from the module after the incident to be positive proof that you are not considered "dangerous."

During the January 10, 1985 oral presentation, Mr. Ellens emphasized the issue of communication difficulties for the hearing impaired person. He pointed out that innocuously intended gestures by a person with one background could be misconstrued by a person with differing experience. Mr. Ellens concluded by requesting your reassignment in lieu of removal.

I have carefully evaluated the substance of both your oral and written replies. I note that, in many instances your version of events is in direct contradiction to the incidents as described in Ms. Lee's proposal letter. After carefully evaluating all corroborating evidence, I have reached the following conclusions.

I must conclude that you did, in fact, improperly restrain Ms. Hill and threaten her life during the November 28, 1984 incident, despite your denial. You offer much background information with the intent of discrediting Ms. Hill's charges. What you fail to effectively explain are the witness statements prepared by other Module 6 employees who were in no way involved in the incident. These statements form the major evidenciary basis for the charges against you. A statement by Ms. Barbara James, for example, notes that "he (you) was hugging her (Ms. Hill) real hard". Ms. James statement, as well as statements prepared by other modular employees Thelma Jordan and Jadwiga Kupczynski all report that you reportedly told Ms. Hill you would shoot or kill her. Even your Assistant Module Manager, Mr. Conroy overheard you tell Ms. Hill "I'm gonna get you" as he approached your desk on that day. I can see no reason why these disinterested third parties would fabricate such allegations. Furthermore, the similarity with which the incident is described in various statements is further proof of these statements' veracity.

I am similarly not persuaded by your inference that Ms. Hill somehow "provoked" your behavior on November 28, 1984. Even if I accepted as true all of the prior incidents which you describe, you report nothing which justifies the magnitude of your unacceptable behavior towards her. Repeated threats of bodily harm and hos-

tile and uninvited physical contact are under *no* circumstances tolerable in the workplace. The fact that you were involved in a similar documented incident involving physical and verbal harassment of a female coworker render your claim of "provocation" even less credible.

In addition, I find compelling evidence to support Ms. Kupczynski's claims of sexual and verbal harassment at your hands. Although your representative, Mr. Ellens, maintains that these charges are not specific enough to prepare a proper response, you seem to have no difficulty categorically denying each cited incident. You offer no explanation as to why Ms. Kupczynski would be motivated to submit such statements or why Ms. Kupczynski's "male friend" would attack you without provocation outside the building. Furthermore, I can see no real relationship between the off-duty fighting incident you describe and the current charges against you. After carefully weighing the potential reliability of your statement and Ms. Kupczynski's, I have concluded that Ms. Kupczynski's is based in fact.

I have also examined Mr. Conroy's transcript of your November 28, 1984 meeting and find it difficult to believe that you made repeated unheeded requests for a union representative and an interpreter. I note that despite the lack of an interpreter, it is clear from your responses that you understood exactly what Mr. Conroy was saying. Mr. Ellens has asked that I reject all information from the interview as inadmissable due to your lack of representation. Even if I discount that evidence, I still find clear and convincing proof that you are guilty of hostile, aggressive, and inappropriate behavior towards coworkers. You have asked me to consider several mitigating factors in making my decision. You have alleged, for example, that your hearing impairment causes major difficulties in your relationships with coworkers. While I can appreciate the special problems faced by handicapped employees in the workplace, I cannot see their relevance to the particular misconduct with which you

are charged. No employee is, by virtue of his handicap, excused from adhering to the high standard of behavior mandated for all Federal employees.

Had this been an isolated incident of misconduct, I might have been persuaded that your hearing impairment made it more difficult for you to understand the inappropriateness of your behavior. However, as the record clearly indicates, there have been many such incidents and your managers have devoted an inordinate amount of time to counseling you regarding proper conduct in the workplace. As recently as July 6, 1984, you were suspended for fourteen calendar days for a misconduct related offense. Certainly, your suspension for five workdays on March 11, 1983, for a similar incident involving hostile and inappropriate behavior toward a female coworker should have convinced you that this behavior would not be tolerated by your managers. It is obvious to me that all of our previous efforts did not have the desired effect of encouraging your improvement, since you continue to demonstrate conduct which is unacceptable for a Federal employee.

In your defense, you explain that threats you made were not serious, and that it was never your intention to physically harm other employees. Your representative, Mr. Ellens, maintains that SSA management recognized this fact since your managers did not choose to immediately remove you from the worksite. I believe that both you and Mr. Ellens are overlooking one very important issue in this case. The employees who were subjected to your hostile physical and verbal assaults regarded those threats with utmost seriousness. Those employees have the right to function in the workplace without fear for their physical and emotional well being. It is my responsibility as a manager of this organization to maintain a safe and secure work atmosphere which is conducive to the efficient performance of employees' assigned duties. Your continued hostile, aggressive and inappropriate behavior disrupts the efficient workings of this Agency. For that reason, I have no alternative but to remove you to

promote the efficiency of the Federal service. Your removal will be effective as of close of business on February 4, 1985. If you wish to appeal this action, you have the option of either appealing in writing to the Merit Systems Protection Board (MSPB), or filing a written grievance at Stage 3 of the negotiated procedure. You may not use both procedures. To be considered, an appeal or grievance must be initiated within 20 calendar days after the effective date of this action. Both procedures allow you to raise any issue, including discrimination. You shall be deemed to have exercised your option at such time as you timely initiate an appeal or grievance under one of these procedures. The choice is irrevocable.

If you wish to appeal this decision under the negotiated procedure, you must submit your grievance in writing to Mr. James M. Hovland, Director of Operations, within 20 calendar days after the effective date of this action.

If you choose to file an appeal with MSPB, you must file your appeal no later than 20 calendar days after the effective date of this action. The appeal, if you choose to file one, should be addressed to:

Chief Appeals Officer
Merit Systems Protection Board
Chicago Regional Office
230 S. Dearborn Street, 31st Floor
Chicago, Illinois 60604

A petition for appeal must comply with Federal Personnel Manual, Supplement 990-1, Book III Rules and Regulations, Part 1201, Subpart D, Section 1201.22 through Section 1201.26. A copy of these (MSPB) regulations and an appeal form are enclosed. Your appeal to the MSPB should inform the MSPB that the records of your case may be obtained by writing to:

Carol Rumps
Chief, Employee Relations Section
Personnel Branch
Great Lakes Program Service Center
600 W. Madison Street
Chicago, Illinois 60606

This information will assist the MSPB in processing your appeal.

An appeal to the MSPB containing an allegation of discrimination (as defined in MSPB Regulations 1201.151(a)(2) will not be processed concurrently with a discrimination complaint filed within the Department of Health and Human Services. Accordingly, if you believe that this action is based on such discrimination, you may:

1. Either appeal to the MSPB within 20 calendar days after the effective date of the action taken against you, raising the matter of discrimination in your appeal, (and otherwise complying with MSPB Regulations 1201.153), or

2. File a discrimination complaint within the Department or a grievance under the negotiated procedure; but you must, if you wish to file a discrimination complaint, you may if you wish to file a grievance, first consult an Equal Employment Opportunity (EEO) Counselor within 30 calendar days after you receive the decision. If you decide to file a formal discrimination complaint within the Department or a grievance under the negotiated procedure, you will still have the right to thereafter request the MSPB to review a decision or issue a decision as appropriate:

a. Within 20 calendar days after you receive the Department resolution or final decision on your discrimination complaint or grievance, or

b. Within 1 year after you filed your formal discrimination complaint within the Department when the Department has neither resolved your discrimination complaint nor issued a final decision on your formal discrimination complaint within a period of 120 calendar days.

Should you have any questions concerning your rights or procedures involved, you and/or your representative may contact the

Personnel Branch, Employee Relations Section, telephone number 353-1648.

Sincerely yours,
s/ Eleanor Toman
Eleanor Toman
Manager, Process Section 1

Attachments:
—Written Presentation
—MSPB Appeal Form
—MSPB Regulations
—Oral Presentation