Mary Kay MACY, et al., Plaintiffs,

v.

John H. DALTON, Secretary
of the Navy, Defendant.

No. Civ. S–91–1320–WBS/JFM.

United States District Court,
E.D. California.

May 12, 1994.

John H. Erickson, Bebe J. Anderson, Kim M. Robinson, Erickson, Beasley, Hewitt and Wilson, Oakland, CA, for plaintiffs.

Joseph E. Maloney, U.S. Atty., Sacramento, CA, David Allen Lee, Department of the Navy, Naval Sea Systems Command, Arlington, VA, George P. Williams, Navy Litigation Office, Washington, DC, A. Kay Lauterbach, Office of Counsel Code 107, Vallejo, CA, for defendant.

*MEMORANDUM AND ORDER*

SHUBB, District Judge.

Plaintiffs, female employees of the Mare Island Naval Shipyard who were discharged in a 1990 reduction-in-force ("RIF"), have brought this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, on the ground that their discharge was motivated by gender bias. Defendant Dalton moves for summary judgment against certain named plaintiffs pursuant to Fed.R.Civ.P. 56. Because the undisputed evidence establishes that the plaintiffs irrevocably elected the grievance procedure provided under their collective bargaining agreement and have not exhausted their claims through that procedure, the court will grant summary judgment in defendant's favor.

Procedurally, two separate motions are now before the court. The first is a motion filed by plaintiffs Haskins and Lewis for reconsideration of this court's order of December 21, 1993, granting defendant's motion for summary judgment against them. The second is a motion for summary judgment filed by defendant against plaintiffs Batoon, Crimmins-Scott, Eaton, King, McCaslin, Miller, Satcher, and Starrett. Because the issues raised by both motions are the same, the analyses will be consolidated.

## BACKGROUND

Only the following facts are material; all are undisputed. First, under the collective bargaining agreement negotiated by their union, plaintiffs were permitted to pursue discrimination claims through a union grievance procedure. Second, each of the ten plaintiffs elected to file a union grievance prior to seeking relief through the statutory Equal Employment Opportunity ("EEO") process.[1] After plaintiffs filed their grievances, plaintiff Mary Kay Macy filed an EEO class complaint with the Shipyard's EEO office. All of the plaintiffs were putative class members.[2] Third, all ten plaintiffs have yet to exhaust the grievance procedure.

## DISCUSSION

### I. Plaintiffs are required to exhaust their negotiated remedy before bringing their discrimination claims in federal court.

As employees at the Shipyard, the plaintiffs were covered by a 1989 collective bargaining agreement between the Shipyard and their union, the Federal Employees Metal Trades Council. The agreement was negotiated by the union and the Shipyard "[p]ursuant to the provisions of the Civil Service Reform Act of 1978 (Public Law 95–454) governing Labor–Management Relations in the Federal Service (5 USC 7101 et seq)." Article 33B of the agreement expressly permitted employees to file grievances with the union alleging discrimination based on, among other things, gender.

The Civil Service Reform Act, Pub.L. No. 95–454, 92 Stat. 1111, "governs the methods and manner by which a federal employee with exclusive union representation"—like Haskins and Lewis—"may challenge an adverse personnel decision by the government agency that employs [her]." *Vinieratos v. United States,* 939 F.2d 762, 768 (9th Cir. 1991). Employees aggrieved by an act of illegal discrimination "which also falls under the coverage of the negotiated grievance procedure may raise *the matter* under a statutory procedure *or* the negotiated procedure, *but not both.*" 5 U.S.C. § 7121(d) (emphasis added).[3] Under the express terms of the Act, an employee is deemed to have irrevocably exercised her option when she "timely initiates an action under the applicable statu-

---

1. Each of the plaintiffs dispute whether they pursued their gender discrimination claims through the grievance procedure. *Id.* at 7; Defendant's Sep. Stmt. of Facts at 6 (filed Mar. 28, 1994). Because it is not material to the disposition of this matter, the dispute over this issue does not preclude summary judgment. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

2. The court notes that there are no class claims remaining in this suit because class certification was denied by the court on October 15, 1993.

3. The statutory procedures available for a unionized federal employee to assert a discrimination claim are through an EEO claim with the agency, *see* 29 C.F.R. § 1613.219(b), or through the Merit Systems Protection Board ("MSPB"), *see* 5 C.F.R. § 1201.4(c).

tory procedure *or* timely files a grievance in writing, ... *whichever event occurs first.*" *Id.* (emphasis added).[4]

■ The Federal Circuit has held that the word "matter," as used in 5 U.S.C. § 7121, refers to the "underlying [employment] action." *Bonner v. Merit Systems Protection Bd.*, 781 F.2d 202, 204–05 (Fed.Cir.1986). When an employee challenges a RIF termination, as plaintiffs have here, the RIF is the "matter" under § 7121. *Id.* at 205. Thus, in the context of this case, the "matter" to which § 7121(d) refers is not plaintiffs' discrimination claim, but rather is plaintiffs' termination in the 1990 RIF.[5]

The courts have interpreted § 7121 to require aggrieved federal employees to elect one remedy and to pursue that remedy to exhaustion:

> Under the terms of the Act, a federal employee who alleges employment discrimination must elect to pursue [her] claim under either a statutory procedure or a union-assisted negotiated grievance procedure; *[she] cannot pursue both avenues, and [her] choice is irrevocable.*

*Vinieratos,* 939 F.2d at 768 (emphasis added); *see Johnson v. Peterson,* 996 F.2d 397, 399 (D.C.Cir.1993); *American Fed'n of Gov't Employees, Local 2052 v. Reno* (*"AFGE"*), 992 F.2d 331, 332 (D.C.Cir.1993); *Smith v. Kaldor,* 869 F.2d 999, 1006 (6th Cir.1989); *Jones v. Dep't of Health & Human Servs.,* 622 F.Supp. 829, 831–32 (N.D.Ill.1985).

In *AFGE,* the District of Columbia Circuit exhaustively addressed the question "of how the employee who chooses the negotiated grievance procedure obtains judicial review in district court." 992 F.2d at 334. In a "mixed case," *i.e.* one involving both discrimination and nondiscrimination-based claims, the Court of Appeals concluded that pursuant to the procedure articulated in § 7121(d), "an employee who chooses the negotiated grievance procedure must take the arbitrator's decision to the MSPB before seeking judicial review." *Id.* at 335.

Section 7121(d), while expressing the requirement that employees elect one remedy or another—"but not both," does not specifically address the situation in which an employee first files a grievance through the negotiated procedure but does not expressly raise a discrimination claim. This situation, however, is directly and unambiguously resolved by the applicable EEOC regulation. The regulation, promulgated to implement 5 U.S.C. § 7121(d), provides in part:

> In cases where a person is covered by a negotiated grievance procedure permitting allegations of discrimination, a person wishing to file a complaint or grievance on a matter of alleged employment discrimination must elect the forum in which to pursue the matter: either the process described in this part or a negotiated grievance procedure. An aggrieved employee who files a grievance in writing with an

---

**4.** 5 U.S.C. § 7121(d) provides in full:

An aggrieved employee affected by a prohibited personnel practice under section 2302(b)(1) of this title which also falls under the coverage of the negotiated grievance procedure may raise the matter under a statutory procedure or the negotiated procedure, but not both. An employee shall be deemed to have exercised his option under this subsection to raise the matter under either a statutory procedure or the negotiated procedure at such time as the employee timely initiates an action under the applicable statutory procedure or timely files a grievance in writing, in accordance with the provisions of the parties' negotiated procedure, whichever event occurs first. Selection of the negotiated procedure in no manner prejudices the right of an aggrieved employee to request the Merit Systems Protection Board to review the final decision pursuant to section 7702 of this title in the case of any personnel action

that could have been appealed to the Board, or, where applicable, to request the Equal Employment Opportunity Commission to review a final decision in any other matter involving a complaint of discrimination of the type prohibited by any law administered by the Equal Employment Opportunity Commission.

**5.** Plaintiffs argue that *Bonner* is inapposite because that case concerned § 7121(a)(2) rather than § 7121(d). However, there is no reason to believe that Congress meant "matter" to have two different meanings within § 7121. *See Morrison–Knudsen Const. Co. v. Director, OWCP,* 461 U.S. 624, 633, 103 S.Ct. 2045, 2050, 76 L.Ed.2d 194 (1983) (stating general rule of statutory construction that "a word is presumed to have the same meaning in all subsections of the same statute"). Moreover, in *Bonner* the Federal Circuit relied in part on the legislative history of § 7121(d) to support its interpretation of "matter." *See* 781 F.2d at 204.

agency whose negotiated agreement with an employee organization permits the acceptance of grievance which allege discrimination prohibited by this subpart, *may not thereafter file [an EEO] complaint on the same matter under the provisions of this subpart irrespective of whether the grievance has raised an allegation of discrimination within the negotiated grievance procedure.*[6]

29 C.F.R. § 1613.219(b) (1990) (emphasis added). The dictates of this regulation are clear: if an employee chooses the grievance route, she may not thereafter file an EEO complaint regardless of whether her grievance alleged unlawful discrimination. The employer/agency, in fact, is instructed by the regulation to reject any EEO claim filed by the employee after the grievance procedure has been elected. *Id.*

■ In resolving any ambiguity in the statute, the court is required to consider the EEOC's interpretation of the statute. *General Elec. Co. v. Gilbert,* 429 U.S. 125, 141–42, 97 S.Ct. 401, 410–11, 50 L.Ed.2d 343 (1976) (superseded by statute on other grounds); *Griggs v. Duke Power Co.,* 401 U.S. 424, 433–34, 91 S.Ct. 849, 854–55, 28 L.Ed.2d 158 (1971). The standard the court must follow was elucidated by the Supreme Court:

> We consider that the rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

*Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944) (applied by the Supreme Court in *Gilbert* to EEOC regulations).

■ Under this standard, 29 C.F.R. § 1613.219(b) is worthy of deference. The regulation is part of a series of regulations that exhaustively deal with equal employment opportunity in federal employment. *See* 29 C.F.R. Pt. 1613. The regulation would have to substantially contradict the statute in order to justify judicial tinkering with this comprehensive regulatory scheme. Also, later EEOC pronouncements on this subject are consistent with this regulation.[7] Finally, the regulation does not conflict with the language of the statute, and it answers a question covered but not directly answered by the statute. The regulation reflects Congress' preference for election of a single remedy and the policy of avoiding claim splitting.[8]

Accordingly, the court holds that under 5 U.S.C. § 7121(d) and 29 C.F.R. § 1613.-

---

**6.** This regulation was "added to address the election between the negotiated grievance process and [the statutory] process, and § 1613.231 continues to indicate that a person may appeal to EEOC from a decision of an agency head or designee on a negotiated grievance." 52 Fed. Reg. 41,921.

**7.** After the 1990 Mare Island RIF, the EEOC reformulated its regulations. Section 1613.-219(b) was replaced by 29 C.F.R. § 1614.301(a). The old and new regulations are identical in effect. New § 1614.301(a) provides in part:

> When a person is employed by an agency subject to 5 U.S.C. 7121(d) and is covered by a collective bargaining agreement that permits allegations of discrimination to be raised in a negotiated grievance procedure, *a person wishing to file a complaint or a grievance on a matter of alleged employment discrimination must elect to raise the matter under either part 1614 or the negotiated grievance procedure, but not both....* An aggrieved employee who files a complaint under this part may not thereafter file a grievance on the same matter. An election to proceed under a negotiated grievance procedure is indicated by the filing of a timely written grievance. *An aggrieved employee who files a grievance with an agency whose negotiated agreement permits the acceptance of grievances which allege discrimination may not thereafter file a complaint on the same matter under this part 1614 irrespective of whether the agency has informed the individual of the need to elect or of whether the grievance has raised an issue of discrimination.*

29 C.F.R. § 1614.301(a) (1993) (emphasis added).

**8.** 29 C.F.R. § 1613.219 was proposed by the EEOC in 1986. 51 Fed.Reg. 29,482, 29,483, 29,488–89 (proposed August 18, 1986). The reason given for the proposed rule was that

> [c]urrent regulation § 1613.219 does not reflect the provision of the Civil Service Reform Act, 5 U.S.C. 7121(d) (1982) that allows allegations of discrimination to be raised in a negoti-

219(b), an employee who elects to file a grievance under a negotiated procedure which permits the grievance of discrimination claims must exhaust his or her administrative remedies through that procedure. An employee cannot exhaust his or her administrative remedies by filing an EEO claim or an MSPB appeal *after* electing to file a grievance.

■ It is not disputed that each of the plaintiffs elected to file a union grievance prior to invoking a statutory remedy. It is also not disputed that none of the plaintiffs have reached the end of that procedure. It follows that plaintiffs' claims in this court are presently barred by "an inexorable rule: failure to exhaust [their] administrative remedies." *Rivera v. United States Postal Serv.*, 830 F.2d 1037, 1039 (9th Cir.1987), *cert. denied*, 486 U.S. 1009, 108 S.Ct. 1737, 100 L.Ed.2d 200 (1988).

Plaintiffs argue that the election of remedies requirement should be ignored because it treats federal employees differently than private-sector employees. Plaintiffs rely on *Clark v. Chasen*, 619 F.2d 1330 (9th Cir. 1980). *Clark* recognized that federal employees are entitled to *de novo* review of their discrimination claims in federal court and held, therefore, that courts "should not hinder the prospect of *de novo* review by burdening employees with exhaustion requirements *beyond those prerequisites set out in the statute*." *Id.* at 1333 (emphasis added) (citing *Chandler v. Roudebush*, 425 U.S. 840, 861, 96 S.Ct. 1949, 1960, 48 L.Ed.2d 416 (1976)).[9] Since the election of one remedy *is* a "prerequisite[ ] set out in the statute," the exhaustion requirement does not contravene the holding of *Clark*.

■ Plaintiffs also argue that requiring them to exhaust their remedies through the grievance procedure precludes a class discrimination claim because the collective bargaining agreement did not permit class discrimination grievances. This argument ignores the fact that the choice of whether to pursue a discrimination claim individually or as part of a class is nothing more than a procedural or strategic choice. Plaintiffs' negotiated grievance procedure permitted grievances alleging discrimination, just not in class form. Plaintiffs had three choices: to pursue their claims individually through the grievance procedure, to pursue their claims individually through the statutory procedure, or to pursue their claims as part of a class through the statutory procedure. Immediately upon selecting the first option they became bound to stay on that administrative track until their claims were exhausted. *Cf. Jones*, 622 F.Supp. at 832.

It is important to note that plaintiffs are not now barred from pressing their discrimination claims in the grievance procedure, then to the EEOC or MSPB, and ultimately (again) to a federal court. 5 U.S.C. § 7121(d). The election of remedies requirement does not cut off access to the courts. It simply requires that parties try to resolve their claims through arbitrators and agencies with special expertise in discrimination claims *before* filing a lawsuit.[10] *See generally Brown v. Marsh*, 777 F.2d 8, 14 (D.C.Cir. 1985) (the purposes of exhaustion are to provide the federal agency with notice, give the parties the opportunity to resolve discrimination claims internally, and to ensure that federal courts are not needlessly burdened).

## II. Plaintiffs' equitable arguments do not relieve them of the exhaustion requirement.

Plaintiffs argue that even if the court finds that they elected the grievance procedure to

---

ated grievance procedure if the collective bargaining agreement so provides. The proposed revision incorporates the CSRA provision, while making it clear that an individual must elect either the complaint or the negotiated grievance procedure.
51 Fed.Reg. 29,483. In promulgating later versions of this regulation, the EEOC has stated its belief "that dual processing is, in most cases, wasteful and confusing...." 57 Fed.Reg. 12,639.

**9.** In *Chandler*, the Court held that federal employees have the same right to a trial *de novo, after exhaustion of the administrative process*, as employees in the private sector. 425 U.S. at 864, 96 S.Ct. at 1961.

**10.** As the EEOC has observed: "If the employee is not satisfied with the result of the grievance process, the complaint can be pursued after the grievance procedure has terminated." 57 Fed. Reg. 12,639.

the exclusion of their statutory remedy, equity should permit them to pursue their Title VII remedy in this court.

■ The threshold question is whether this court even has jurisdiction to consider plaintiffs' equitable arguments. To the extent that exhaustion requirements are not jurisdictional they may be subject to equitable defenses, but to the extent that they are jurisdictional they must be strictly enforced. *See Shendock v. Director, OWCP*, 893 F.2d 1458, 1466 (3rd Cir.) (en banc), *cert. denied*, 498 U.S. 826, 111 S.Ct. 81, 112 L.Ed.2d 53 (1990) ("Equitable tolling or estoppel simply is not available when there are jurisdictional limitations."); *Hays v. Postmaster General*, 868 F.2d 328, 330 (9th Cir.1989) ("[T]he invocation of equitable considerations does not give a court the power to exercise jurisdiction in violation of the limits established by Congress.").

Upon first blush, the courts seem to be split on the question of whether the exhaustion requirements in Title VII cases are jurisdictional. On the one hand, in *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), the Supreme Court held that the failure to file a timely EEOC charge is not a jurisdictional prerequisite to a Title VII claim and, instead, is merely a statutory requirement subject to waiver, estoppel, and equitable tolling. *Id.* at 393, 102 S.Ct. at 1132; *see Karim–Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 626 (9th Cir.1988). The *Zipes* holding has been extended to Title VII suits by federal employees. *See Rennie v. Garrett*, 896 F.2d 1057, 1059–60 (7th Cir.1990) (collecting cases from other circuits). Following *Zipes*, a number of Ninth Circuit cases have held that administrative exhaustion requirements in Title VII cases are "not jurisdictional but [are] merely [ ] condition[s] precedent to suit which a defendant may waive or be estopped from asserting." *Stache v. Int'l Union of Bricklayers*, 852 F.2d 1231, 1233 (9th Cir. 1988); *Vinieratos*, 939 F.2d at 768 n. 5. Discussing the appropriate standard of appellate review, the *Vinieratos* court noted,

> We do not recognize administrative exhaustion under Title VII as a *jurisdictional requirement* per se; we treat it as a

legal question under the de novo standard because the issue is whether the plaintiff has satisfied a *statutory precondition* to suit.

*Id.*

Other Ninth Circuit cases, on the other hand, hold that the presentment of discrimination claims to an appropriate administrative agency *is* a jurisdictional prerequisite. *Serpe v. Four–Phase Systems, Inc.*, 718 F.2d 935, 936 (9th Cir.1983); *Shah v. Mt. Zion Hosp. & Med. Ctr.*, 642 F.2d 268, 271 (9th Cir.1981). In cases where the plaintiff/employee never raised a discrimination claim administratively prior to filing suit, courts in this circuit have found that they do not have subject matter jurisdiction. *See Blank v. Donovan*, 780 F.2d 808, 809 (9th Cir.1986); *Scott v. Perry*, 569 F.2d 1064, 1065–66 (9th Cir.1978) (per curiam); *Worrell v. Uniforms To You & Co.*, 673 F.Supp. 1461, 1462–63 (N.D.Cal.1987).

In *Worrell*, the plaintiff filed suit prior to filing any administrative discrimination claim at all and the district court dismissed on jurisdictional grounds. The court held that *Zipes* stands for the narrow proposition that the failure to file a *timely* EEOC charge is not a jurisdictional requirement. Distinguishing *Zipes*, the court ruled that the "failure to file with the EEOC precludes suit in federal court because the filing of a charge of discrimination with the EEOC is a jurisdictional prerequisite to federal subject matter jurisdiction." 673 F.Supp. at 1462 (citing *Serpe*, 718 F.2d at 936).

Further pointing out the apparent uncertainty in the law, a recent Ninth Circuit panel observed that the plaintiff's "failure to comply with the statutory prerequisites *may or may not* affect jurisdiction under Title VII." *Learned v. City of Bellevue*, 860 F.2d 928, 931 (9th Cir.1988) (emphasis added). The court then concluded that it did not have to reach the jurisdictional issue in that case. *Id.*

These seemingly diverse holdings can perhaps be reconciled by turning to a rule applied in other exhaustion cases. The exhaustion requirement consists of two elements: " 'the jurisdictional' non-waivable require-

ment of presentment of the claim ... (presentment); and (2) the 'waivable' requirement of exhaustion of administrative remedies (exhaustion)." *Cassim v. Bowen*, 824 F.2d 791, 794 (9th Cir.1987) (action by doctor challenging suspension from Medicare); *Mathews v. Eldridge*, 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976) (action for Social Security benefit payments); *Cal–Almond, Inc. v. Yeutter*, 756 F.Supp. 1351, 1354 (E.D.Cal. 1991) (action challenging Department of Agriculture order). *Cf. Feise v. Resolution Trust Corp.*, 815 F.Supp. 344, 348 (E.D.Cal. 1993) (holding failure to exhaust administrative remedies under FIRREA was jurisdictional where plaintiff did not submit claim to RTC).

■ If the plaintiff fails to present a claim to the appropriate administrative agency, the defendant agency may not waive or be estopped from asserting the exhaustion requirement. *See Cal–Almond*, 756 F.Supp. at 1355. But, if the plaintiff presents but then abandons a claim made to an agency, the court will consider whether the agency waived or may be deemed in equity to have waived the exhaustion requirement. *Id.* at 1355–56.

■ In the context of Title VII, the jurisdictional presentment requirement is met when the employee/plaintiff presents her claims to the employer/agency or an appropriate administrative review body such as the MSPB or EEOC, even if the claims are not timely presented. *See, e.g., Stache*, 852 F.2d at 1232–33; *Boyd v. United States Postal Serv.*, 752 F.2d 410, 412, 414 (9th Cir.1985). However, the presentment requirement is not met and the court lacks jurisdiction when the plaintiff's claims have never been presented for agency or administrative review. *See, e.g., Blank*, 780 F.2d at 809; *Scott*, 569 F.2d at 1065–66; *Worrell*, 673 F.Supp. at 1462–63.

■ In this case, plaintiffs elected to pursue the negotiated grievance remedy. Accordingly, they have satisfied the jurisdictional claims presentation requirement. However, they did not exhaust the negotiated remedy prior to pursuing their discrimination claims in this court. As the District of Columbia Circuit held in *AFGE*, exhaustion of the negotiated remedy in a mixed case necessarily entails review by the MSPB. 992 F.2d at 335. Plaintiffs abandoned the negotiated procedure prior to taking an appeal to the MSPB. Thus, plaintiffs have failed to satisfy the "waivable" requirement of exhaustion of the administrative process.

Since this failure does not deprive the court of subject matter jurisdiction, the court has jurisdiction to consider plaintiffs' equitable arguments. However, in order to prevail on those arguments plaintiffs must show that some equitable consideration justifies an exception to the exhaustion requirement in this case.

■ Plaintiffs do not make the necessary showing. In a nutshell, plaintiffs initiated the negotiated remedy, pursued that remedy, then—in mid-stream—leapt to this court before exhausting the remedy they irrevocably elected. This is not a situation, as plaintiffs argue, in which they merely failed to comply with the intricacies of administrative procedure, *see Brown v. Marsh*, 777 F.2d at 15–18, or made a good faith effort to comply with the administrative procedures applicable under their elected remedy. Plaintiffs simply abandoned their elected remedy when they discovered that a class action had been filed in federal court in which they were putative plaintiffs.

Rather than argue any specific theory of equitable relief, such as equitable estoppel or equitable tolling, plaintiffs ask the court to relieve them from the exhaustion requirement in light of "general equitable considerations." Plaintiffs point to a number of particular "considerations": (1) defendant had notice of and investigated their race discrimination claims prior to the institution of the class action in this court; (2) plaintiffs made a good faith effort to exhaust their discrimination claims; (3) plaintiffs were misinformed about the election of remedies requirement; (4) plaintiffs would be substantially prejudiced by further delay and expense, and defendant would suffer no prejudice if the complaint is dismissed; (5) "various aspects of these women's claims have been litigated at both the administrative and judicial level;" and (6) defendant should have

rejected plaintiffs' EEO claims earlier rather than making the exhaustion argument at this time.

■■■ The availability of equitable relief against the federal government generally rests in part on a showing of a serious injustice. *See Mukherjee v. Immigration and Naturalization Serv.*, 793 F.2d 1006, 1008–09 (9th Cir.1986). Although plaintiffs have shown that there will be some delay and expense associated with dismissal, they have not shown that they will suffer any serious injustice if the court adheres to the exhaustion requirement. Plaintiffs will not be denied the right to pursue their discrimination claims through negotiated procedure and, ultimately, will get their day in federal court. Further, there is no showing of affirmative misconduct by government representatives, nor is there any evidence that plaintiffs detrimentally relied on any misinformation regarding election of remedies *prior to* filing their grievance.

Another factor that weighs against plaintiffs is that requiring exhaustion furthers Congressional intent. The "underlying purpose" of Title VII is "to encourage informal conciliation and to foster voluntary compliance." *Stache*, 852 F.2d at 1234; *Brown v. Marsh*, 777 F.2d at 14–15. When a plaintiff fails to adhere to administrative claim requirements this purpose is undermined. In such cases, the Ninth Circuit has dismissed Title VII claims on exhaustion grounds. *Stache*, 852 F.2d at 1234.

All plaintiffs who present but fail to exhaust their elected administrative remedies are in the same situation as the plaintiffs herein. They have all notified their employers of their claims by presentment; they have all expended time and effort in pursuing their lawsuit and do not wish to be required to go back and exhaust their administrative remedies; and they have all misunderstood or ignored the exhaustion requirement. In those cases in which a plaintiff will forever lose his or her right to argue a discrimination claim in federal court, equitable relief may be appropriate. That is not the case here. If the statutorily mandated election and exhaustion requirements are to have any impact at all, the courts must be willing to enforce them even at the price of some delay.

### CONCLUSION

The ten plaintiffs irrevocably elected their negotiated grievance procedure before attempting to pursue a statutory remedy. The grievance procedure permits them to pursue their discrimination claims. They have not yet exhausted that procedure. The equitable considerations argued by plaintiffs are not sufficient to permit the court to ignore the election and exhaustion requirements imposed by Congress. Accordingly, their claims must be dismissed without prejudice.

IT IS THEREFORE ORDERED that plaintiffs Haskins' and Lewis' motion to reconsider the court's December 21, 1993, order be, and the same is hereby, DENIED.

IT IS FURTHER ORDERED that defendant's motion for summary judgment against plaintiffs Batoon, Crimmins–Scott, Eaton, King, McCaslin, Miller, Satcher, and Starrett be, and the same is hereby, GRANTED.