**Sandra MARTELL, Plaintiff,**

v.

**Gale NORTON, Secretary, Department of the Interior, and the United States of America, Defendant.**

**No. A4–01–85.**

United States District Court,
D. North Dakota,
Northwestern Division.

Jan. 31, 2003.

Donald G. Bruce, Attorney At Law, Belcourt, ND, for plaintiff.

Cameron W. Hayden, U.S. Attorney's Office, Bismarck, ND, for defendant.

## MEMORANDUM AND ORDER

HOVLAND, Chief Judge.

## I.  INTRODUCTION

This dispute arises out of an assault allegedly committed against the plaintiff by Lana Decoteau.  The plaintiff, Sandra Martell [Martell], is a teacher's aide at the Turtle Mountain Elementary School in Belcourt, North Dakota.  Martell initiated the above-captioned action against the Government on September 6, 2001, asserting claims under Title VII of the Civil Rights Act and the Federal Tort Claims Act. The Government filed a motion for summary judgment Court on October 31, 2002.  For reasons explained below, the Government's motion is granted in part and denied in part.

## II.  BACKGROUND OF THE CASE

On February 23, 1999, Sandra Martell approached a counselor at the Turtle Mountain Elementary School to report that another teacher's aide was abusing students.  Roman Marcellais, the principal, and Lana Decoteau, the assistant principal, met with Martell later that day to discuss her report.  According to Martell, the administrators discounted her report of child abuse and demanded that she recant her allegations.

Thereafter, the evidence reveals that Martell was reassigned to a new classroom on February 25, 2002.  Martell initially balked at the reassignment but eventually relented.  Several students converged on Martell as she was walking down the hallway to her new classroom and gave her hugs.  It is alleged that assistant principal Decoteau witnessed this and rushed to Martell, grabbed her, and pushed her. Marcellais and Decoteau subsequently met with Martell to discuss the incident in the hallway.  During the meeting it is alleged that Martell was informed that any effort on her part to pursue a claim would be in vain.  Martell contacted the school on the morning of February 26, 2002, to inform the administration that she was not feeling well.  Principal Marcellais denied Martell sick leave.

Martell then contacted her union, the National Federation of Federal Employees Local # 175 [the "Union"], to complain that she had been assaulted by Decoteau; that she had been denied Union representation during her two meetings with Marcellais and Decoteau;  and that she had been denied sick leave.  The Union then filed grievances on Martell's behalf on March 2, 1999, and March 8, 1999.

On April 26, 1999, Principal Marcellais denied the grievances and that prompted the Union to file charges with the Federal Labor Relations Authority. The parties reached a settlement on May 5, 1999. The Union agreed to withdraw its charges in return for written assurances from the Bureau of Indian Affairs that it would not retaliate against Martell and that school officials understood their obligations regarding Union representation. However, the settlement agreement was not signed by Martell and apparently did not address Martell's allegations of discrimination.

On February 4, 2000, EEO counselor Martin Shutt completed a Notice of Final Interview and Right to File a Discrimination Complaint. This document was received and acknowledged by Martell on February 22, 2000. Martell then filed an administrative complaint with the Equal Employment Opportunity Commission on February 22, 2000, alleging that Principal Marcellais had discriminated against her: (1) because of her sex for reporting suspected child abuse, (2) by not allowing her Union representation, (3) by reassigning her to another classroom, (4) by denying her the use of accumulated sick leave, (5) by failing to protect her from physical injury, and (6) by enforcing reprisals against her. An administrative hearing was held on June 25, 2001. The administrative law judge (ALJ) dismissed Martell's complaint pursuant to 29 C.F.R. 1614.107(a)(4) based on the conclusion that Martell had previously raised these matters in a negotiated grievance procedure.

Martell then commenced this lawsuit in federal court on September 6, 2001, within ninety (90) calendar days of the decision. In Count One of her complaint, Martell alleged negligent supervision of Decoteau by Loretta DeLong and Principal Marcellais that enabled the assault and battery to occur. In Count Two, Martell alleged that Decoteau was "allowed to perpetrate sex discrimination ... by committing an assault and battery" on Martell solely because she is a woman and as a direct result of DeLong's and Marcellais's negligent supervision of Decoteau.

On October 31, 2002, the Government filed a motion for summary judgment on the following grounds: (1) lack of subject matter jurisdiction, (2) sovereign immunity, (3) that the exclusive remedy provisions of the Federal Employees Compensation Act (FECA) bars Martell's claims, (4) that an election was made by filing claims/grievances pursuant to the Civil Service Reform Act and applicable regulations providing for a negotiated grievance procedure which bars all claims for discrimination as a matter of law, and (5) that Martell failed to initiate contact with a counselor within the 45 day time requirement, 29 C.F.R. § 1614.105, and is barred from presenting claims for discrimination.

## III. STANDARD OF REVIEW

The Court will grant a motion for summary judgment only if the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must resolve all ambiguities and draw all reasonable inferences in the plaintiff's favor. Id. If the defendants can show that there is no issue of material fact, then the plaintiff must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); see also Celotex Corp., 477 U.S. at 324, 106 S.Ct. 2548. A mere trace of evidence supporting the plaintiff's position is insufficient the facts must generate evidence from which a jury could reasonably find for the plaintiff. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## IV.  LEGAL DISCUSSION

Counsel for Martell has acknowledged that the "claim under the Federal Torts Claim Act (FTCA) is dubious at best" and that Martell "would not oppose dismissal of the tort part of the Complaint." See Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment, p. 6. Thus, Martell has essentially admitted that the claims arising under the Federal Tort Claims Act are devoid of merit and warrant dismissal. As such, the Court concludes that a dismissal of the claims brought pursuant to the Federal Tort Claims Act is warranted. Therefore, the only remaining issue concerns the claim of sex discrimination under Title VII.

### A.  TITLE VII CLAIM

Pursuant to an agreement negotiated by her Union, Martell was permitted to pursue a claim through a Union grievance Procedure. A Negotiated Agreement establishing grievance procedures existed between the Department of the Interior— Bureau of Indian Affairs and the Union and the relevant portions of the grievance procedure provide as follows:

Applicability and Options. These negotiated grievance procedures shall be the sole means available for resolving disputes over matters within its scope except for the options provided below.

A.  An aggrieved employee adversely affected by a prohibited personnel practice (Section 2302(b)(1) of Title 5) may raise the matter under the statutory procedure or under the negotiated grievance procedure, but not both. The employee shall have the option to choose a procedure. Filing constitutes a final decision of the employee's choice.

B.  Grievances concerning actions based on unacceptable performance (Article 13) or adverse actions (Article 14) may be raised with MSPB (appeal procedures of Section 7701 of Title 5 of U.S.C.), or under the negotiated grievance procedure, but not both. An employee shall have the option to choose a procedure. Filing constitutes a final decision of the employee's choice.

C.  If an aggrieved employee files under MSPB, or EEOC, or the negotiated grievance procedure (NGP), the respective procedure will be used. A mixed complaint will be raised in its entirety before the MSPB if appropriate, or under the negotiated grievance procedure. Selection of the negotiated grievance procedure in no manner prejudices the right of the employee to request a review of the final decision by the MSPB or Equal Employment Opportunity Commission (EEOC).

The Government contends that Martell elected to pursue her administrative remedies through the negotiated grievance procedures and that the ALJ's dismissal of Martell's EEOC complaint was proper. In the alternative, the Government contends that the ALJ's dismissal of Martell's sex discrimination claim was appropriate because Martell failed to report the incidents of discrimination to an EEO counselor within 45 days of the alleged discriminatory event as required by 29 C.F.R. § 1614.105(a)(1).[1] Nevertheless, it is well-established that the election of remedies

---

**1.**  Section 1614.105(a)(1) states the following about pre-complaint processing:

An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.

29 C.F.R. § 1614.105(a). When the facts are viewed in a light favorable to the plaintiff, the record reveals that Martell initiated contact within this 45 day window. The ALJ reached the same conclusion. See Transcript of Administrative Hearing held before Ronald W. Iaoka, p. 5. Ultimately, this is of little consequence as Martell elected to seek re-

requirements does not cut off access to the courts and does not preclude a civil action under Title VII.

Martell does not dispute that a federal employee taking exception to an employer's actions may either file an administrative complaint with the EEOC or pursue recourse through the negotiated grievance procedures. However, Martell argues that she did not elect the negotiated grievance procedure because she did not sign the grievances filed by the Union representative. Additionally, Martell argues that she contacted the EEO counselor about the alleged discrimination prior to initiating the grievance procedure through the Union. The only other legal argument raised by Martell was her contention that she never specifically grieved the alleged discrimination.

## B. ELECTION OF REMEDIES

█ The record establishes that Martell first submitted her grievances on March 2, 1999, and on March 8, 1999. She later resubmitted her grievance on March 29, 1999. Martell first contacted the EEO on March 22, 1999. She contacted the EEO again on December 13, 1999, to inquire about filing a complaint. Martell first met with an EEO counselor on January 25, 2000. It is clear and undisputed that Martell initiated the grievance procedures by submitting a written grievance prior to contacting the EEO. The initiation of the

grievance procedures constitutes an election of remedies under the Negotiated Agreement. See 5 U.S.C. § 7121(d).

The Court finds that Martell's assertion that she did not sign the grievances to be disingenuous. To be considered valid under the terms of the Negotiated Agreement, formal grievances containing the following must be filed with within 21 calendar days of the event giving rise to the grievance: the employee's name/Union Local number; the date of alleged incident; a description of the facts of the grievance; the provisions of the grievance allegedly violated; the relief sought by the employee; the issues to be addressed throughout the grievance process, and the employee's signature/Union representative's signature/date. The grievances filed on Martell's behalf by the Union on March 2 and March 8, 1999, as well as those resubmitted by the Union on March 29, 1999, and April 14, 1999, satisfied these requirements. The initial grievances filed by the Union also bear Martell's signature.

The Court further finds that Martell's assertion that she never grieved the alleged discrimination unpersuasive. Although Martell's grievances do not explicitly charge Marcellais with sex discrimination, when examining the Union grievances and EEOC complaint side by side, it is clear that they are substantively similar.[2] Further, the rec-

---

course through the negotiated grievance procedures.

**2.** In grievances filed by the Union, Martell states that her assault was precipitated by her decision to report suspected child abuse. Martell goes on to state that Decoteau and Marcellais engaged in prohibited personnel practices that created a hostile work environment. She also complains that meetings with Marcellais and Decoteau were conducted in a "climate of retaliation and vindictiveness ... creat[ing] a stressful, intimidating and hostile work atmosphere."

Martell's EEO complaint relates to the same incidents described in her grievances. Martell complains that her reports of child abuse were discounted, that she was denied sick leave, that she was denied union representation in meetings with Decoteau and Marcellais, that she was assaulted, and that she was transferred to another classroom in retaliation for speaking up. Additionally, the initial basis given by Martell for her EEO complaint included reprisal, harassment, and intimidation.

ord indicates that it was Martell's dissatisfaction with the resolution of her grievances that prompted her to file an EEO claim.

5 U.S.C., § 7121(d) provides:

An aggrieved employee affected by a prohibited personnel practice under section 2302(b)(1) of this title which also falls under the coverage of the negotiated grievance procedure may raise the matter under a statutory procedure or the negotiated procedure, but not both. An employee shall be deemed to have exercised his option under this subsection to raise the matter under either a statutory procedure or the negotiated procedure at such time as the employee timely initiates an action under the applicable statutory procedure or timely files a grievance in writing, in accordance with the provisions of the parties' negotiated procedure, whichever event occurs first.

5 U.S.C. § 7121(d). When construing Section 7121(d), a number of courts have held that "an employee who elects to file a grievance under a negotiated procedure which permits the grievance of discrimination claims must exhaust his or her administrative remedies through that procedure. An employee cannot exhaust his or her administrative remedies by filing an EEO claim ... *after* electing to file a grievance." *Macy v. Dalton*, 853 F.Supp. 350, 355 (E.D.Cal.1994).

In this case, Martell filed her initial grievances before meeting with an EEO counselor. It is clear and undisputed that she elected to proceed with the negotiated grievance procedure. By making this election, Martell forfeited her right to pursue an EEO claim and is not entitled to a second bite at the apple. Thus, the ALJ acted in accordance with the law and properly dismissed the administrative EEOC complaint on June 25, 2001. However, this does not end the Court's analysis.

It is well-established that the election of remedies requirement does not cut off access to the courts. It simply requires that the parties try to resolve their claims through arbitration and/or through agencies with special expertise in handling such claims before filing a lawsuit. *Macy v. Dalton*, 853 F.Supp. 350, 355 (E.D.Cal. 1994) citing *Brown v. Marsh*, 777 F.2d 8, 14 (D.C.Cir.1985)(the purposes of exhaustion are to provide the federal agency with notice, give the parties the opportunity to resolve discrimination claims internally, and to ensure that federal courts are not needlessly burdened.) Thus, the threshold issue that remains is whether Martell exhausted the administrative remedies available to her under the negotiated grievance procedures which is a prerequisite to a civil action under Title VII.

## C. EXHAUSTION OF REMEDIES

In its motion for summary judgment, the Government contends that the Court lacks subject matter jurisdiction. Although it offers no analysis on this issue, the Government is presumably referring to the requirement that Martell, after making an election of remedies, must exhaust the available administrative remedies before pursuing an action in federal district court.

■ It is well-settled that exhaustion of administrative remedies is a jurisdictional prerequisite to a private civil action under Title VII. *See Mohr v. Dustrol, Inc.*, 306 F.3d 636, 643 (8th Cir.2002). The Union's Negotiated Agreement with the Department of the Interior provides for a three-step grievance procedure. See Exhibit 20, pp. 14–16. The first step requires the filing of a formal grievance with the immediate supervisor. Should the grievance be denied at the first step, the employee can proceed to the second step of the process which entails forwarding the grievance to the next level supervisor. Fi-

nally, if the grievance is denied at the second step, the employee can proceed to the third step and forward her grievance further up the chain of command. The Negotiated Agreement further provides that if a grievance is not resolved, the matter may be referred to arbitration. See Exhibit 20, p. 18. However, it is clear that arbitration is permissive rather than mandatory.

Martell's grievances were first filed with her immediate supervisor which was her principal, Roman Marcellais. Martell then pursued the next step and forwarded her grievances to the Agency Superintendent for Education who concluded that the grievance had been resolved through the settlement agreement with the Federal Labor Relations Authority and that Martell's requested remedy had been granted. Although as a technical matter, Martell only completed the first two steps of the grievance procedure, the Court concludes that as a practical matter, she did exhaust the available administrative remedies under the negotiated grievance procedure as the second and third steps are essentially the same in this case. At the third step Martell would again refer her grievance to the Agency Superintendent for Education. The outcome of that referral is obvious under the circumstances. Thereafter, the last administrative remedy would be arbitration which is permissive in nature rather than mandatory under the Negotiated Agreement. As a practical matter, Martell has exhausted her administrative remedies under the circumstances.

■ The factual basis for the claim of sex discrimination under Title VII is somewhat questionable. None of the parties addressed the issue of whether the facts support a prima facie case of discrimination. The gist of the plaintiff's complaint

appears to center on the events in late February 1999 that resulted in the grievances filed on her behalf by the Union in early March 1999, i.e., the alleged assault by Decoteau; the denial of Union representation at two meetings; and denial of sick leave. The allegations of sex discrimination are less than clear. However, viewing the evidence in a light most favorable to the plaintiff, and drawing all reasonable inferences in the plaintiff's favor, there is arguably some evidence to overcome summary judgment at this stage.[3] The plaintiff will need to establish a prima facie case of sex discrimination at trial under the McDonnell Douglas framework and analysis. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Mohr v. Dustrol, Inc.,* 306 F.3d 636 (8th Cir.2002).

■ The merits of Martell's claim aside, the pursuit of a claim through grievance under a collective bargaining agreement does not preclude a private civil suit under Title VII. *See Varner v. National Super Markets, Inc.,* 94 F.3d 1209, 1213 (8th Cir.1996); citing *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 49, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). In Alexander, the Supreme Court held that federal courts have been granted the power to adjudicate suits under Title VII as long as the jurisdictional prerequisites dictated in Title VII are satisfied. Martell has exhausted her administrative remedies under the negotiated grievance procedures and she has satisfied the jurisdictional prerequisites of Title VII. When the facts are viewed in a light most favorable to the plaintiff, there are genuine issues of material fact in dispute that preclude summary judgment of dismissal at this stage.

---

**3.** Based on the current state of the case, it appears that the only triable issue that exists is whether the alleged negligent supervision

of Martell's supervisor (Decoteau) was the result of sex discrimination.

## V. CONCLUSION

The Government's motion for summary judgment (Docket No. 16) is GRANTED IN PART AND DENIED IN PART. Martell has abandoned her claim under the Federal Tort Claims Act and that claim is dismissed with prejudice. However, Martell's claim under Title VII survives and summary judgment as to the Title VII claim is DENIED.

IT IS SO ORDERED.