**AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, LOCAL 2052, et al., Appellants,**

v.

**Janet RENO, et al., Appellees.**

No. 91–5317.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 25, 1993.

Decided April 23, 1993.

Rehearing Denied July 14, 1993.

Alexia McCaskill, with whom Mark D. Roth, Charles A. Hobbie and Judith D. Galat were on the brief, for appellants.

James R. Layton, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty. at the time the brief was filed, and John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., were on the brief, for appellees.

Before BUCKLEY, SENTELLE and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

Acting pursuant to the negotiated grievance procedure provided by the collective bargaining agreement between the American Federation of Government Employees (AFGE or Union) and the Bureau of Prisons (BOP), an arbitrator upheld a grievance brought by the AFGE on behalf of one of its members against the BOP. Subsequently, the arbitrator denied the AFGE's application for attorneys' fees. The AFGE sought judicial review of the denial but the district court dismissed its complaint, concluding that the AFGE was first required to seek review by either the Merit Systems Protection Board (MSPB) or the Equal Employment Opportunity Commission (EEOC). The AFGE appeals and we affirm.

## I.

■ In 1987, the BOP terminated Stephen Michniak, a case manager, for allegedly unacceptable performance. Michniak filed a grievance with his union, the AFGE, claiming reverse discrimination, *see* 5 U.S.C. § 2302(b)(1), and sought reinstatement under the Civil Service Reform Act (CSRA). 5 U.S.C. §§ 7101 *et seq.* Because Michniak's case involved both a discrimination claim and a job action complaint, Michniak's complaint fell into the "mixed case" category under the CSRA, that is, his complaint challenged both the job action (termination) and the illegally discriminatory reason for the job action (reverse discrimination).

■ For a mixed case, the CSRA establishes a special procedure. *See* 5 U.S.C. § 7702(a)(1); *Romain v. Shear*, 799 F.2d 1416, 1419 (9th Cir.1986) (employee's complaint constituted mixed case because it involved "an adverse action normally appealable to the MSPB *and* an allegation that a basis for the action was discrimination") (emphasis original). The procedure requires the aggrieved employee to make an initial binding choice. He may seek relief either under a statutory procedure or under the negotiated grievance procedure but not under both. 5 U.S.C. § 7121(d); *see also Smith v. Kaldor*, 869 F.2d 999, 1005 (6th Cir.1989); *Vinieratos v. Department of the Air Force*, 939 F.2d 762, 768 (9th Cir.1991) (noting irrevocability of choice).

Under the *statutory* procedure, the employee may first raise the complaint with his employing agency which has 120 days to reach a decision. 5 U.S.C. § 7702(a)(2). If the agency decides against the employee, the employee may either appeal to the MSPB or seek direct judicial review. 5 U.S.C. § 7702(a). If the employee appeals to the MSPB, it must reach a decision within 120 days, at the end of which period the employee may either proceed directly to court or seek further administrative review. 5 U.S.C. § 7702(a)(3). An employee who wishes to follow the administrative route may appeal the MSPB's decision to the EEOC which, under the statute, has 30 days to decide whether to hear the case. 5 U.S.C. § 7702(b)(1). If the EEOC rejects the case or if it accepts the case and agrees with the MSPB's decision, the employee may then proceed to court. 5 U.S.C. § 7702(b)(5)(A). If the EEOC accepts the case but disagrees with the MSPB, however, it must remand the case to the MSPB for further consideration. 5 U.S.C. §§ 7702(b)(3)(B), (b)(5)(B). Upon reconsidering the case, the MSPB issues an opinion that either agrees with the EEOC or rejects the EEOC's findings. If the MSPB agrees with the EEOC, the employee may seek judicial review. 5 U.S.C. § 7702(c). If the MSPB rejects the EEOC's findings, however, the statute calls for the creation of a special panel to make a final decision. 5 U.S.C. § 7702(d)(1). The special panel's final

decision is then subject to judicial review. 5 U.S.C. § 7702(d)(2)(A).

The *negotiated grievance* procedure is usually much simpler. Here, the collective bargaining agreement between the AFGE and the BOP provides for binding arbitration of claims involving both job actions and discrimination. J.A. at 1–2. Not surprisingly, Michniak, represented by the Union, chose to avoid the statutory procedure by pursuing his claims through the negotiated grievance procedure. Pursuant to the agreement, the AFGE submitted Michniak's claims to arbitration. After a hearing, the arbitrator concluded that Michniak had been the victim of reverse discrimination and ordered him reinstated with back pay. He denied, however, the Union's request for attorneys' fees.

The AFGE then sought judicial review in the district court. The district court dismissed the complaint, holding that the Union had not exhausted its administrative remedies in not first seeking either MSPB or EEOC review of the arbitrator's decision as required by section 7702 of the CSRA. The AFGE appeals the dismissal, asserting that the statute *allows*, but does not *require*, an employee with a mixed case to proceed before the MSPB or the EEOC before seeking judicial review.

## II.

■ The AFGE maintains that review of an arbitration decision in a mixed case is governed by the following language of subsection (f) of section 7121 of the CSRA:

In matters covered under sections 4303 and 7512 of this title which have been raised under the negotiated grievance procedure in accordance with this section, section 7703 of this title pertaining to judicial review shall apply to the award of an arbitrator in the same manner and under the same conditions as if the matter had been decided by the [MSPB].[1]

5 U.S.C. § 7121(f). A close reading of section 7121 in its entirety, however, makes clear that subsection (f) does not apply to a mixed case.

Section 7121, divided into subsections (a) through (f), establishes in subsection (a) that a collective bargaining agreement affords the *exclusive* procedure for resolving a covered grievance between the employee and his employer unless the employee's grievance falls under either subsection (d) or subsection (e). Subsection (d) applies when an employee is "affected by a prohibited personnel practice under section 2302(b)(1) of this title."[2] Section 2302(b)(1) lists as prohibited personnel practices certain forms of discrimination. 5 U.S.C. § 2302(b)(1) (prohibiting discrimination based on race, color, religion, sex, national origin, age, disability, marital status or political affiliation). Because subsection (d) encompasses section 2302(b)(1) claims, it applies to pure discrimination cases and because it alludes to section 7702, as explained *infra*, it also applies to mixed cases. Unlike subsection (a), which makes the negotiated grievance procedure exclusive, subsection (d) directs an employee to make an initial election between the negotiated grievance procedure and "a statutory procedure." 5 U.S.C. § 7121(d). In a pure discrimination case, the statutory procedure consists of the EEO complaint format under 42 U.S.C. § 2000e–16. *See generally* 29 C.F.R. § 1613 (1992). In a mixed case like Michniak's, the statutory alternative is set forth in the multi-tiered and multiple choice procedure of section 7702 discussed earlier.

1. Section 7703 of the CSRA makes a final order or decision of the MSPB judicially reviewable on the employee's application. 5 U.S.C. § 7703(a)(1).

2. The relevant language of subsection (d) provides:

An aggrieved employee affected by a prohibited personnel practice under section 2302(b)(1) of this title which also falls under the coverage of the negotiated grievance procedure may raise the matter under a statutory procedure or the negotiated grievance procedure, but not both.... Se-lection of the negotiated procedure in no manner prejudices the right of an aggrieved employee to request the [MSPB] to review the final decision pursuant to section 7702 of this title in the case of any personnel action that could have been appealed to the Board, or, where applicable, to request the [EEOC] to review a final decision in any other matter involving a complaint of discrimination of the type prohibited by any law administered by the [EEOC].
5 U.S.C. § 7121(d).

In contrast to subsection (d), subsection (e) does not encompass discrimination claims. Instead, it applies only to "matters covered under sections 4303 and 7512 of this title." 5 U.S.C. § 7121(e).[3] Section 4303 addresses actions based on unacceptable performance; section 7512 covers removals, reductions in grade or pay and certain furloughs and suspensions. Like subsection (d), subsection (e) also allows the employee to choose between the negotiated grievance procedure and the statutory procedure.

It might be argued that a mixed case could fall under subsection (e) inasmuch as a mixed case includes job actions covered by sections 4303 or 7512 as well as discrimination claims. Subsection (e), however, contains language manifesting that it is inapplicable to a mixed case. It directs an employee who chooses the statutory procedure to section 7701, which contains the MSPB review route, rather than to section 7702, which sets forth the procedure to be followed in a mixed case. Subsection (d), in contrast, expressly refers to section 7702. To preserve the integrity of the structure of subsections (d) and (e) as separate statutory provisions, we must give effect to the different language used in those sections. *Cf. Mountain States Tel. & Telegraph Co. v. Pueblo of Santa Ana*, 472 U.S. 237, 105 S.Ct. 2587, 86 L.Ed.2d 168 (1985) (statute must be interpreted to give meaning to all provisions). By so doing, we conclude that subsection (d) applies to mixed cases and that subsection (e) applies only to job actions, that is, cases arising under sections 4303 and 7512.

We now come to subsection (f). It provides that:

> In matters covered under sections 4303 and 7512 of this title which have been raised under the negotiated grievance procedure in accordance with this section, section 7703 of this title pertaining to judicial review shall apply to the award of an arbitrator in the same manner and under the

same conditions as if the matter had been decided by the [MSPB].

5 U.S.C. § 7121(f). The AFGE argues that subsection (f) allows it to take the arbitrator's decision to the district court without first seeking MSPB review. The beginning language of subsection (f), providing that it applies to "matters covered under sections 4303 and 7512," is the same language that begins subsection (e) and therefore must be interpreted *in pari materia* to apply to the same class of cases covered by subsection (e). So interpreted, subsection (f), like subsection (e), applies only to job action (that is, nondiscrimination) cases.

Given this reading of subsections (e) and (f), the only other source of authority for an employee to seek direct judicial review of an arbitration decision in a mixed case is subsection (d) itself. As noted earlier, it provides that "[s]election of the negotiated grievance procedure in no manner prejudices the right of an aggrieved employee to request the [MSPB] to review the final decision." 5 U.S.C. § 7121(d). But subsection (d) does not *expressly* authorize direct judicial review of an arbitrator's final decision. It does no more than allow the employee to seek MSPB review.[4] Thus, neither subsection (d), subsection (e) nor subsection (f) of section 7121 expressly gives the employee the right to direct judicial review of an arbitrator's decision in a mixed case. The language in subsections (e) and (f) allowing direct judicial review applies only to nondiscrimination cases while subsection (d), which covers mixed cases, contains no language affording direct judicial review.

We are left with the question of how the employee who chooses the negotiated grievance procedure obtains review in district court. The answer lies not in section 7121 but in section 7703, entitled "Judicial review of decisions of the Merit Systems Protection Board." 5 U.S.C. § 7703. Under section

---

**3.** The relevant portion of subsection (e) provides: Matters covered under sections 4303 and 7512 of this title which also fall within the coverage of the negotiated grievance procedure may, in the discretion of the aggrieved employee, be raised either under the appellate procedures of section 7701 of this title or under the negotiated grievance procedure, but not both.

5 U.S.C. § 7121(e).

**4.** As the AFGE noted in its brief and at oral argument, this language does not *require* an employee to appeal an arbitrator's decision to the MSPB. AFGE Br. at 9. The BOP agrees. Government Br. at 14–15.

7703 an employee with a discrimination claim may proceed to court after receiving notice of a "judicially reviewable action" under section 7702. 5 U.S.C. § 7703(b)(2). Because under subsection 7121(d) an employee who chooses the negotiated grievance procedure initially forfeits the statutory procedure, it would seem, at first glance, that the employee could not obtain notice of a judicially reviewable action under section 7702 and thus that section 7703 would be unavailable. But, as noted earlier, section 7121(d) provides a mechanism by which an employee who elects to use the negotiated grievance procedure may obtain judicial review under section 7702. The employee, as subsection (d) spells out, may seek MSPB review of the arbitrator's decision. Under section 7703, the MSPB's decision is then subject to judicial review because it is a "judicially reviewable action under [ ] 7702." 5 U.S.C. §§ 7703(a)(1), 7703(b)(2). Accordingly, in a mixed case an employee who chooses the negotiated grievance procedure must take the arbitrator's decision to the MSPB before seeking judicial review. *Cf. Brown v. General Servs. Admin.*, 425 U.S. 820, 829–33, 96 S.Ct. 1961, 1966–67, 48 L.Ed.2d 402 (1976) (claim for judicial review is not ripe until employee has exhausted administrative remedies).

 Notwithstanding the complex yet ultimately ascertainable procedural scheme that emerges from the language of the CSRA, the AFGE asks us to adopt a different reading of the statute based on legislative history. The AFGE points to a statement by a congressman suggesting that the MSPB has no authority to review an arbitration decision in a mixed case. The congressman suggested instead that the employee "may request the EEOC to review the decision or may invoke judicial review including the right to a trial de novo." 124 Cong.Rec. H. 13609–10 (daily ed. Oct. 14, 1978). As the BOP points out, however, the congressman's remarks were made the day *after* the CSRA was signed into law. Addressing these same remarks in another case, we concluded that the statement was entitled to "little weight" in inter-

preting the statute. *See American Fed'n of Gov't Employees, Locals 225, 1504 and 3723, AFL–CIO v. FLRA*, 712 F.2d 640, 647 & n. 29 (D.C.Cir.1983). We now reaffirm our earlier conclusion.[5]

 Next, turning from legislative history, the AFGE maintains that our reading of the statute conflicts with the EEOC's and the MSPB's interpretations. It is true that the EEOC's instructional manual entitled "A Guide to Rights and Responsibilities in Resolving Disputes in the Federal Government" includes a diagram indicating that an arbitrator's decision in a mixed case may be reviewed directly by the district court. The procedural scheme is sufficiently clear from the statute, however, that deference to an administrative interpretation is not necessary. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council Inc.*, 467 U.S. 837, 842–43 & n. 9, 104 S.Ct. 2778, 2781 & n. 9, 81 L.Ed.2d 694 (1984) ("[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent"). Even if deference to the EEOC's interpretation of the mixed case procedure were appropriate, we do not think that a diagram in an agency manual is the sort of authoritative agency pronouncement to which we must defer. *See Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 70 n. 6, 107 S.Ct. 367, 372 n. 6, 93 L.Ed.2d 305 (1986) ("EEOC guidelines are properly accorded less weight than administrative regulations declared by Congress to have the force of law"); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944) ("The weight of [an advisory administrative] judgment" depends on, among other things, "the thoroughness evident in its consideration").

The AFGE's argument based on MSPB precedent is similarly unpersuasive. The AFGE maintains that the MSPB's decision in *Bell v. Department of Defense*, 43 MSPR 63 (1989), holding that it could not review an arbitrator's denial of attorneys' fees, means

---

**5.** The AFGE also relies on language included in a Senate Report to support its contention that direct judicial review is available here. S.Rep. No. 969, 95th Cong., 2d Sess. (1978), *reprinted in*

1978 U.S.Code Cong. & Ad.News 2723, 2833. That report, however, merely paraphrases section 7121(f) without providing any guidance on whether it applies to a mixed case.

that district court review is the only avenue available to the AFGE and Michniak to challenge the arbitrator's decision here. In response, the BOP devotes considerable effort to distinguishing *Bell.* *See* Gov't Br. at 19–20. What both parties neglect to mention, however, is that the MSPB's decision in *Bell* was subsequently reversed by the Federal Circuit, *see Bell v. MSPB,* 914 F.2d 271 (Table), 1990 WL 123383, 1990 U.S.App. LEXIS 14790 (Fed.Cir.1990), and therefore is no longer valid precedent.

■ Finally, the AFGE contends that our interpretation of the CSRA may contradict congressional policy, embodied in the CSRA, to provide an employee complaining of discrimination numerous ways to obtain judicial rather than administrative review.[6] The AFGE's policy argument could be construed as an implied right of action argument. The AFGE's briefs, however, do not make the argument and accordingly we need not address it.[7]

In summary, a careful analysis of the language and the structure of the CSRA reveals that an employee like Michniak, who chooses to pursue a mixed case through the negotiated grievance procedure, must first appeal the arbitrator's decision to the MSPB before seeking judicial review. Subsection (f) of section 7121, which allows direct judicial review of an arbitrator's decision, applies only to cases covered under subsection (e). Subsection (e) does not address mixed cases. Mixed cases are covered by subsection (d). Subsection (d) allows an employee in a mixed case to seek MSPB review of an arbitrator's decision. Sections 7702 and 7703 provide that the MSPB's decision in a mixed case may be challenged in district court. Thus, the CSRA provides a path by which the AFGE, on behalf of its members, can obtain judicial review. Accordingly, the district court's dismissal of the AFGE's complaint is

*Affirmed.*

---

6. In fact, an employee who chooses to follow the statutory procedure in a mixed case can abandon his pursuit of administrative remedies in favor of judicial review at least six times during the review process. *See* 5 U.S.C. § 7702. Each opportunity to obtain direct judicial review is expressly provided for in the statute.

7. Even if the AFGE had properly presented an implied right of action argument, the argument would likely be rejected. To determine whether a right of action is implied, the "focal point is Congress' intent," *Thompson v. Thompson,* 484 U.S. 174, 179, 108 S.Ct. 513, 515, 98 L.Ed.2d 512 (1988), and its intent "may appear implicitly in the language or structure of the statute." *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 18, 100 S.Ct. 242, 246, 62 L.Ed.2d 146 (1979); *see also Touche Ross & Co. v. Redington,* 442 U.S. 560, 575–76, 99 S.Ct. 2479, 2488–89, 61 L.Ed.2d 82 (1979). In light of the multiple *express* statutory opportunities for *ultimate* judicial review, we decline to imply a right to immediate judicial review when Congress omitted one. Our conclusion is reinforced by the fact that Congress has provided an alternative, albeit more circuitous, route to judicial review through MSPB review. As this court has previously emphasized, the area of federal personnel management is "peculiarly within the ken and concern of Congress." *Harrison v. Bowen,* 815 F.2d 1505, 1515 (D.C.Cir.1987). Thus, "reading between the lines [of the CSRA] to interpolate remedies Congress did not provide can only lead the court into error." *Id.* As a result, we have consistently refused to add implied rights of action to the remedies expressly afforded by the CSRA. *See, e.g., id.* (holding that nonpreference eligible excepted employees do not have implied right of action under CSRA to challenge adverse actions); *Borrell v. United States Int'l Communications Agency,* 682 F.2d 981, 985–92 (D.C.Cir. 1982) (holding no implied right of action under CSRA to allow whistleblower to bypass administrative procedures by filing suit directly in district court).

Moreover, because the CSRA authorizes suits against the government, it operates as a waiver of sovereign immunity. As such, it "must be construed strictly in favor of the sovereign, and not enlarged ... beyond what the language requires." *United States v. Nordic Village, Inc.,* — U.S. —, — - —, 112 S.Ct. 1011, 1014–15, 117 L.Ed.2d 181 (1992) (citations, brackets and quotation marks omitted); *see also Ardestani v. Immigration & Naturalization Serv.,* — U.S. —, —, 112 S.Ct. 515, 520, 116 L.Ed.2d 496 (1991) (waiver of sovereign immunity "must be strictly construed in favor of the United States").