Edwin F. **FERNANDEZ,**
**Plaintiff–Appellant,**

v.

Michael **CHERTOFF,**[1] **Secretary, Department of Homeland Security,**
**Defendant–Appellee.**

**Docket No. 05–0426–cv.**

United States Court of Appeals,
Second Circuit.

Argued: Oct. 17, 2005.

Decided: Dec. 5, 2006.

---

1. Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Secretary of the Department of Homeland Security, Michael Chertoff, is automatically substituted for former Secretary Thomas Ridge as the respondent in this case.

Richard Merritt, Lindenhurst, NY, for Plaintiff–Appellant.

Steven M. Warshawsky, Assistant United States Attorney for the Eastern District of New York (Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, Varuni Nelson, As-

sistant United States Attorney, on the brief), Brooklyn, NY, for Defendant–Appellee.

Before: MINER, KEARSE, and HALL, Circuit Judges.

MINER, Circuit Judge.

Plaintiff-appellant Edwin F. Fernandez ("Fernandez") appeals from a judgment of the United States District Court for the Eastern District of New York (Gleeson, *J.*) dismissing his Complaint against defendant-appellee Michael Chertoff, as Secretary of the Department of Homeland Security ("Department"), for failure to state a claim upon which relief can be granted. Fernandez, who is of Puerto Rican ethnicity, commenced this action pro se under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), alleging employment discrimination on account of his race, sex, and national origin after the Department denied his request to be reinstated to his former position as a Canine Enforcement Officer ("CEO") following a two-year medical leave of absence. In his Complaint, Fernandez alleged that his labor union, the National Treasury Employees Union ("NTEU"), initially challenged the Department's decision denying his reinstatement by invoking arbitration under a collective bargaining agreement but later withdrew his grievance from arbitration when he rejected a proposed settlement.

The Department moved to dismiss the Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief could be granted, contending that Fernandez had not appealed to the Equal Employment Opportunity Commission ("EEOC") following the NTEU's withdrawal from arbitration and therefore failed to exhaust his administrative remedies under the Civil Service Reform Act of 1978 before filing his Title VII lawsuit. Following a hearing, the District Court determined that Fernandez had failed to exhaust his administrative remedies by not appealing his grievance to the EEOC, and the court further declined to apply equitable principles to excuse this failure. The court then granted the Department's motion and dismissed the Complaint. Because we conclude that the District Court, in declining to apply equitable principles to excuse Fernandez's failure, erred in failing to consider all of the unique circumstances of this case, we vacate the judgment of the District Court and remand for further proceedings consistent with this opinion.

## BACKGROUND

### I. Fernandez's Medical Leave of Absence and Return to Work

Fernandez was injured on August 5, 1999 when he slipped and fell down a stairway while working as a CEO at Newark Airport for the United States Customs Service (now Customs and Border Protection). As a result of his fall, Fernandez sustained injuries to his neck, right shoulder, and lower back and underwent rehabilitation that caused him to miss work from September 1999 to August 20, 2001, when he returned to active duty. In the intervening time period, Fernandez was examined by several doctors who evaluated his ability to return to work.

On July 5, 2000, Fernandez was examined by Dr. Michael Carciente, who opined that Fernandez did not suffer from any neurological injury that would prevent him from returning to work as a CEO. On July 18, 2000, Fernandez was examined by Dr. Andrew Weiss, who also concluded that Fernandez was capable of returning to active duty employment without any restrictions. On September 20, 2000, however, Fernandez was examined by Dr. Igor

Stiler, who diagnosed him with a herniated disc in the lumbar region and with injuries to the thoracic and cervical spines. Stiler opined that Fernandez was considered to have a partial disability and approved his return to work on restricted duty only. The restrictions prevented Fernandez from lifting more than twenty pounds, sitting or standing in the same position for more than twenty minutes, and squatting, bending, or reaching above his head.

Fernandez forwarded Stiler's opinion letter to his supervisors on September 25, 2000 and requested to return to work in a light duty capacity. He was advised, however, that no light duty existed for the canine unit and that he was required to provide the Department with a physician's note indicating that he was able to return to full duty. On November 14, 2000, the Department sent Fernandez a letter setting forth his various options for returning to work or going on disability. On November 28, 2000, in response to an inquiry from the Department, Stiler confirmed that Fernandez was unable to return to full-duty employment due to his disc herniation and that his work restrictions should be considered permanent. On December 4, 2000, Fernandez again requested to return to work in a light duty capacity, but he received no response.

Subsequently, Fernandez was examined by Dr. Andrew Feldman, who opined that he would be able to return to work on full duty and without any restrictions on February 19, 2001. On March 16, 2001, Fernandez was examined by Dr. Areta Podhorodecki, who performed a functional capacity evaluation, concluded that he met the skill level requirements for a CEO, and also recommended that he return to full duty.

In light of the conflicting medical opinions, the Office of Workers' Compensation Programs referred Fernandez to Dr. San-ford Wert. Following an examination on April 30, 2001, Wert opined that there was no objective evidence of any disability and concluded that Fernandez could continue working in his pre-accident occupation in a normal capacity. Fernandez thereafter wrote a letter to Customs Service Area Director Kathleen Haage on May 4, 2001, advising that he had not heard from the Department about his return to work and that he was "fit, able and willing to return to work full duty." In addition, Fernandez alleged that he had been 22 "persecuted, discriminated and retaliated [against] because of previous [grievances] filed against [a] canine officer supervisor."

On July 18, 2001, Fernandez again notified the Department that he was prepared to return to work. Because his leave of absence had exceeded one year, however, the Department determined that it was not obligated to return him to his former CEO position and instead reassigned him to the position of a GS–9 Customs Entry Program Specialist in the World Trade Center, to commence August 20, 2001.

## II. *The NTEU Grievance Process and Fernandez's EEO Complaint*

On September 7, 2001, Larry Tanacredi, president of the local chapter of the NTEU representing employees in the Customs Service, filed a grievance on behalf of Fernandez challenging the Department's decision to deny reinstatement and requesting a meeting to discuss dispute resolution. The collective bargaining agreement between the Department and the NTEU in place at that time permitted allegations of discrimination to be raised through the negotiated grievance process. Following delays in convening the meeting due to the events of September 11, 2001, the NTEU reiterated its demand for a dispute resolution meeting to address Fernandez's claim.

On October 22, 2001, an Equal Employment Opportunity ("EEO") Counselor in the Department was notified by NTEU that a grievance had been filed on Fernandez's behalf. Two days later, Fernandez was advised that he could not seek relief from the Equal Employment Opportunity ("EEO") Counselor because he had elected to resolve his complaint through the grievance process: "the filing of the NTEU grievance indicates that [Fernandez] has elected to pursue this matter via non-EEO process," and "[t]he same issue cannot be pursued through the EEO process." He was also advised that if he were dissatisfied with the result of the grievance proceeding, "he could contact an EEO Counselor within 45 days of completion of gr[ie]vance process (final action)." Despite this notice, on October 31, 2001, Fernandez contacted an EEO Counselor and filed an informal complaint alleging retaliation in connection with the Department's refusal to reinstate him. Fernandez then filed a formal EEO complaint on November 15, 2001. The formal complaint was dismissed by letter on December 13, 2001. The letter advised Fernandez that his complaint of discrimination was being dismissed "because the matter was raised in a negotiated grievance procedure that permits allegations of discrimination." Significantly, the letter also indicated that "[t]he final decision on the grievance may be appealed to the EEOC."

On August 22, 2002, the NTEU, pursuing the dispute resolution process, invoked arbitration of Fernandez's grievance. On January 6, 2003, Fernandez authorized the appointment of NTEU Assistant Counsel Ralph Talarico as his representative. In December 2003, the Department offered to settle Fernandez's grievance by, among other things, placing him in a CEO position at John F. Kennedy International Airport, along with a promotion to GS–11. The NTEU, through Talarico, advised Fernandez to accept the offer or it would withdraw the grievance from arbitration. Dissatisfied with the terms of the proposed settlement, however, Fernandez refused to sign the agreement, which he believed to be a "trap door to termination" by the Department. On March 24, 2004, the NTEU withdrew the grievance from arbitration. Fernandez contends that he was not permitted to participate in the arbitration process.

Shortly thereafter, Fernandez contacted the EEOC to seek a right-to-sue letter, but his efforts were unsuccessful. Fernandez filed the instant Complaint on May 5, 2004. The form Complaint provided to Fernandez indicated that "[t]his action is brought for discrimination in employment pursuant to . . . Title VII" and noted that "[i]n order to bring a suit in federal district court under Title VII, you must first obtain a right to sue letter from the Equal Employment Opportunity Commission." In a letter to the District Court accompanying the Complaint, Fernandez advised that he "returned to the EEOC in New York to request an updated right to su[e] letter, as I was told by the pro se office[,] but the EEOC said that I did[ not] need it."

III. *Proceedings Before the District Court*

The Department moved to dismiss Fernandez's Complaint on the grounds that (1) his Title VII claim was barred under the Civil Service Reform Act of 1978 by his initial decision to pursue relief under the NTEU's negotiated grievance procedure; (2) his Title VII claim was untimely; and (3) he failed to exhaust his administrative remedies in the EEOC after the NTEU withdrew from arbitration. In support of its motion, the Department argued that Fernandez failed to exhaust his administrative remedies because he "still was re-

quired to appeal *to the EEOC* before filing the present lawsuit if he was dissatisfied either with the [Department's] offer, with the NTEU's decision to withdraw the arbitration, or with any other aspect of the grievance process." The Department further indicated that Fernandez "did *not* appeal to the EEOC, or take any other steps to pursue his grievance ... within the standard 30–day period for appeals to the EEOC, *cf.* 29 [C.F.R.] §§ 1614.401(a), 1614.402(a)," and that there was no basis for invoking principles of waiver, estoppel, or equitable tolling because "[t]he [Department] informed [Fernandez] in December 2001 that his EEO claim was barred by his prior decision to file a union grievance ... [and i]t also informed him that he could appeal the outcome of the grievance to the EEOC."

Following a hearing, the District Court granted the Department's motion and dismissed the Complaint. The court first determined that Fernandez's election to proceed under a negotiated grievance procedure required him to exhaust that remedy before filing his Title VII lawsuit and that his failure to "appeal the result of the grievance process to the EEOC" precluded him from seeking relief in federal court. The court then declined to apply equitable doctrines to excuse Fernandez's failure to exhaust EEOC remedies, finding that he had received notice of his right to appeal "the final decision" of the grievance process to the EEOC but had failed to exercise reasonable diligence in doing so. *Fernandez v. Ridge*, 2004 WL 3088664, at *7 (E.D.N.Y. Dec.17, 2004). Moreover, the court determined that Fernandez had not shown any extraordinary circumstances that prevented him from appealing to the EEOC. Finally, the court

held that Fernandez was statutorily barred from seeking any relief because he was required to raise his grievance under either a negotiated procedure or a statutory procedure, but not both, and he already had pursued the same matter through the NTEU's negotiated procedure without having appealed to the EEOC. This timely pro se appeal by Fernandez ensued.[2]

## DISCUSSION

### I. *Standard of Review*

 We review an order of dismissal under Federal Rule of Civil Procedure 12(b)(6) de novo, construing the complaint in favor of the plaintiff and dismissing the complaint only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). During the pleadings stage in litigation, "[t]he appropriate inquiry is not whether a plaintiff is likely to prevail, but whether he is entitled to offer evidence to support his claims." *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir.2005) (citations omitted). Thus, we assume the truth of all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff, *id.*—a rule that " 'applies with particular force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se.*' " *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir.2002) (quoting *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir.1998)). Moreover, we review a district court's determination to deny equitable tolling for abuse of discretion. *See Zerilli–Edelglass v. New York*

---

**2.** Fernandez moved in this Court for an order to allow an attorney to present oral argument on his behalf. We granted the motion and, following oral argument, requested briefing from Fernandez's counsel with respect to "the issue of the Court's subject matter jurisdiction in this case." A supplemental brief thereafter was filed by counsel.

*City Transit Auth.,* 333 F.3d 74, 81 (2d Cir.2003).

## II. *Statutory Framework*

### A. *Election of Remedies*

The Civil Service Reform Act of 1978, Pub.L. No. 95–454, 92 Stat. 1111 (Oct. 13, 1978) ("CSRA"), " 'comprehensively overhauled the civil service system,' replacing a patchwork of rules and regulations with a 'new framework for evaluating adverse personnel actions against [federal employees].' " *Dotson v. Griesa,* 398 F.3d 156, 163 (2d Cir.2005) (quoting *Lindahl v. Office of Pers. Mgmt.,* 470 U.S. 768, 773–74, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985)) (alteration in *Dotson* ). The CSRA requires unions and federal employers to include procedures for settling grievances in their collective bargaining agreements. The term "grievance" is defined to include any complaint "by any employee concerning any matter relating to the employment of the employee." 5 U.S.C. § 7103(a)(9)(A). With limited exception, the CSRA provides that the grievance procedure in any collective bargaining agreement "shall be the exclusive administrative procedure[ ] for resolving grievances which fall within [the agreement's] coverage." *Id.* § 7121(a)(1). Where the employee is aggrieved by discrimination, however, he may elect to seek relief under an alternative procedure, designated as the statutory procedure. *Id.* § 7121(d). To further "balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration," the CSRA "prescribes in great detail the protections and remedies applicable to [adverse personnel] action[s], including the availability of administrative and judicial review." *U.S. v. Fausto,* 484 U.S. 439, 443, 445, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988).

 Under the CSRA, an employee of the United States Customs and Border Protection who is aggrieved by discriminatory personnel practices may, in the first instance, pursue his grievance under the negotiated grievance procedure or the statutory complaint procedure, *but not both.* See 5 U.S.C. § 7121(d); *Johnson v. Peterson,* 996 F.2d 397, 398–99 (D.C.Cir. 1993). Said differently, an employee who alleges a discriminatory personnel practice "must elect to pursue his claim under either a statutory procedure or a union-assisted grievance procedure; he cannot pursue both avenues, and his election is *irrevocable." Vinieratos v. U.S. Dep't of the Air Force,* 939 F.2d 762, 768 (9th Cir. 1991) (emphasis added). By invoking the negotiated procedure, the employee commits to resolving his grievance in accordance with the procedures prescribed in the collective bargaining agreement between his union and his employing agency. Specifically, the CSRA

establishes a collective-bargaining system for federal agencies and their employees, under the administration of the [Federal Labor Relations Authority]. The Act recognizes the right of federal employees to form and join unions, 5 U.S.C. § 7102, and imposes upon management officials and employee unions the duty to "negotiate in good faith for the purposes of arriving at a collective bargaining agreement." [5 U.S.C.] § 7114(a)(4). A collective-bargaining agreement must provide procedures "for the settlement of grievances," [5 U.S.C.] § 7121(a)(1), which are defined as "complaint[s] ... concerning ... any claimed violation, misinterpretation, or misapplication of any law, rule, or regulation affecting conditions of employment," [5 U.S.C.] § 7103(a)(9)(C)(ii); and the agreement must "provide that any grievance not satisfactorily settled under the negotiated grievance procedure shall be subject to binding arbitration" which

may be invoked by either party. [5 U.S.C.] § 7121(b)(3)(C) [presently 5 U.S.C. § 7121(b)(1)(C)(iii) ].

*Dep't of Treasury, I.R.S. v. Fed. Labor Relations Auth.,* 494 U.S. 922, 924–25, 110 S.Ct. 1623, 108 L.Ed.2d 914 (1990).

On the other hand, by invoking the statutory procedure, an employee pursues his grievance under the statutory and regulatory framework created to resolve original complaints of employment discrimination under Title VII and related statutes. Under the statutory procedure, the CSRA distinguishes between "pure" discrimination cases and "mixed" discrimination cases. A "pure" discrimination case, *Johnson,* 996 F.2d at 398 n. 1, involves claims of discrimination only. *See* 5 U.S.C. § 2302(b)(1) (prohibiting discrimination based on race, color, religion, sex, national origin, age, disability, marital status or political affiliation). For example, an employee may claim that his termination was prompted by discrimination without challenging the employer's stated reasons for his termination. Or, the employee may claim that the penalty imposed, although authorized, was applied only to members of his or her race. These scenarios are examples of "pure" discrimination cases. An aggrieved employee may pursue a "pure" discrimination case in the first instance by filing a complaint with the EEO Office of his employing agency. *See* 29 C.F.R. § 1614.106.

By contrast, a "mixed" case involves both a claim of discrimination *and* a challenge to other types of prohibited personnel actions taken by the agency that are ultimately appealable to the Merit Systems Protection Board ("MSPB"). 5 U.S.C. § 7702; *Am. Fed'n of Gov't Employees, Local 2052 v. Reno,* 992 F.2d 331, 332 (D.C.Cir.1993). The MSPB has jurisdiction to review personnel actions that include removal, reduction in grade or pay, and denial of reinstatement, among others. *See* 5 U.S.C. §§ 7512, 7701(a), 7702. An aggrieved employee in a mixed case may file a "mixed case complaint" with the EEO Office of his employing agency, *see* 29 C.F.R. § 1614.302(a)(1) (defining a "mixed case complaint" as "a complaint of employment discrimination filed with a Federal agency based on race, color, religion, sex, national origin, age or handicap related to or stemming from an action that can be appealed to the [MSPB]"). Alternatively, an employee in a mixed case may file a "mixed case appeal" directly to the MSPB, *see* 29 C.F.R. §§ 1614.302(a)(2) (defining a "mixed case appeal" as "an appeal filed with the MSPB that alleges that an appealable agency action was effected, in whole or in part, because of discrimination on the basis of race, color, religion, sex, national origin, handicap or age"); *see also Johnson,* 996 F.2d at 398 n. 1; 5 C.F.R. § 353.304(a) ("[A]n injured employee or former employee of an agency in the executive branch . . . may appeal to the MSPB an agency's failure to restore, improper restoration, or failure to return an employee following a leave of absence."); 29 C.F.R. §§ 1614.106, 1614.301(a); *Economou v. Caldera,* 286 F.3d 144, 149 (2d Cir.2002); *Sloan v. West,* 140 F.3d 1255, 1259–60 (9th Cir.1998). *See generally* 29 C.F.R. § 1614.302(b) ("An aggrieved person may initially file a mixed case complaint with an agency pursuant to this part or an appeal on the same matter with the MSPB pursuant to 5 CFR [§ ] 1201.151, but not both.").

The foregoing illustrates that an employee aggrieved by discrimination may elect either the negotiated or statutory procedure to resolve his grievance in the first instance and that the statutory procedure available to him depends upon the nature of his claim.

B. *The Right to Appeal*

█ As relevant to this appeal, once an employee elects to pursue the negotiated grievance procedure and that process is carried out to completion, administrative review becomes available. Before bringing a Title VII action in the district court, an aggrieved employee is required to exhaust his administrative remedies. *See Downey v. Runyon*, 160 F.3d 139, 145 (2d Cir.1998). Under 5 U.S.C. § 7121(d):

> An aggrieved employee affected by a prohibited personnel practice under section 2302(b)(1) of this title which also falls under the coverage of the negotiated grievance procedure may raise the matter under a statutory procedure or the negotiated procedure, but not both. An employee shall be deemed to have exercised his option under this subsection to raise the matter under either a statutory procedure or the negotiated procedure at such time as the employee timely initiates an action under the applicable statutory procedure or timely files a grievance in writing, in accordance with the provisions of the parties' negotiated procedure, whichever event occurs first. *Selection of the negotiated procedure in no manner prejudices the right of an aggrieved employee to request the Merit Systems Protection Board to review the final decision pursuant to section 7702 of this title in the case of an personnel action that could have been appealed to the Board, or, where applicable, to request the Equal Employment Opportunity Commission to review a final decision in any other matter involving a complaint of discrimination of the type prohibited by any law administered by the Equal Employment Opportunity Commission.*

(emphasis added).

█ Because § 7121(d) encompasses § 2302(b)(1) claims—i.e., claims of discrimination based on race, color, religion, sex, national origin, age, disability, marital status, or political affiliation—it applies to pure discrimination cases. Because § 7121(d) also alludes to § 7702—which establishes a special statutory procedure for mixed claims—it applies to mixed cases, as well. With respect to pure discrimination cases,

> section 7121(d) requires a federal employee with a pure discrimination complaint to choose between the statutory and the negotiated grievance procedures. The employee who chooses the negotiated procedure may appeal the arbitrator's decision to the EEOC. Only after the EEOC has rendered a decision or failed to do so within 180 days may the employee ... initiate suit in district court."

*Johnson*, 996 F.2d at 401. Accordingly, in a pure discrimination case, an employee who chooses the negotiated grievance procedure must appeal the arbitrator's award to the EEOC before bringing suit. In such a case, "an appeal of a final grievance decision on a grievance which raises an employment discrimination claim, must be filed at the [EEOC] within 30 days of complainant's receipt of the final decision by the ... arbitrator." E.E.O.C. Dec. 01A42454, 2004 WL 1918283, *2 (Aug. 17, 2004) (citing EEOC Management Directive 110, Chapter 10, Section II(A)(4) (November 9, 1999)); *see* E.E.O.C. Dec. 01A40558, 2004 WL 717088, *1 (Mar. 24, 2004).

█ With respect to mixed cases, a careful analysis of the language and the structure of the CSRA reveals that an employee ... who chooses to pursue a mixed case through the negotiated grievance procedure, must first appeal the arbitrator's decision to the MSPB before seeking judicial review.... Mixed cases are covered by subsection (d) [of § 7121]. Subsection (d) allows an

employee in a mixed case to seek MSPB review of an arbitrator's decision. . . . Thus, the CSRA provides a path by which the [employee] can obtain judicial review.

*Am. Fed'n of Gov't Employees,* 992 F.2d at 336. Thus, in a mixed case, an employee must appeal the arbitrator's award to the MSPB before seeking judicial review.

## III. *Fernandez's Grievance*

### A. *The Nature of Fernandez's Claim*

■ The Department contends—for the first time on appeal—that Fernandez pursued a mixed discrimination case because "his claim involves a prohibited personnel action over which the Merit Systems Protection Board has jurisdiction." The significance of the Department's argument is that, in a mixed case, Fernandez would have been required to appeal to the MSPB under § 7121(d) before commencing this action in the District Court, which he clearly did not do. Based upon our review of the Record, however, we conclude that Fernandez raised a pure discrimination claim and, therefore, that he was required to pursue his administrative remedies in the EEOC.

First, Fernandez was advised by letter dated December 13, 2001 that his EEO complaint was being dismissed "because the matter was raised in a negotiated grievance procedure that permits allegations of discrimination." That letter characterized Fernandez's claim as a "formal complaint of discrimination" that "raise[d] an allegation of retaliation" identical to the one raised in the negotiated grievance procedure. Significantly, the letter specifically notified Fernandez that, while "any allegations of discrimination must be raised in the grievance process" because he elected to pursue his grievance in that forum, "*[t]he final decision on the grievance may be appealed to the EEOC.*" (em-

phasis added). The letter mentioned nothing of a "mixed" claim, a claim involving a prohibited personnel action under the exclusive jurisdiction of the MSPB, or a right to appeal to the MSPB if the result of arbitration was not favorable. As far as Fernandez knew, he had raised a pure discrimination claim and could appeal the final decision of the arbitrator to the EEOC.

Second, the Department's own motion to dismiss recognized that Fernandez had raised a pure discrimination claim that could be exhausted only in the EEOC. In support of the motion, the Department asserted that "[e]ven if the decision to withdraw the arbitration was made by the union and not [Fernandez], [Fernandez] was still required to appeal *to the EEOC* before filing the present lawsuit if he was dissatisfied either with the [Department]'s offer, with the NTEU's decision to withdraw the arbitration, or with any other aspect of the grievance process." The Department further stated that Fernandez "did not appeal to the EEOC, or take any other steps to pursue his grievance" and "[c]onsequently, he failed to exhaust his administrative remedies under the union grievance process, thereby precluding him from bringing suit in court." Finally, the Department recognized that it had "informed [Fernandez] in December 2001 that his EEO claim was barred by his prior decision to file a union grievance. . . . It also informed him that he could appeal the outcome of the grievance to the EEOC." The District Court relied on the Department's arguments and concluded that Fernandez failed to exhaust his administrative remedies by "not appeal[ing] the result of the grievance process to the EEOC."

Third, the form Complaint provided to Fernandez at the time that he commenced this action characterized his claim as

"brought for discrimination in employment pursuant to ... Title VII." The Complaint contained a notice advising that "[i]n order to bring a suit in federal district under Title VII, you must first obtain a right to sue letter from the Equal Employment Opportunity Commission." In reliance upon this notice, Fernandez contacted the EEOC office to request a right to sue letter, but his request was denied. Based upon the foregoing, we find no evidence to support the Department's novel claim that Fernandez pursued a mixed case or was notified of his right to appeal to the MSPB and, in fact, find evidence to the contrary. Accordingly, we conclude that Fernandez pursued a pure discrimination claim.

### B. *Fernandez's Election of Remedies*

It is undisputed that Fernandez irrevocably elected to pursue the negotiated procedure to resolve his pure discrimination claim. Based upon the collective bargaining agreement in place between the Department and NTEU at the time that Fernandez was denied reinstatement, the NTEU requested a dispute resolution meeting on behalf of Fernandez and thereafter invoked arbitration.

> An aggrieved employee who files a grievance with an agency whose negotiated agreement permits the acceptance of grievances which allege discrimination may not thereafter file a[n EEO] complaint on the *same matter* under this part 1614 irrespective of whether the agency has informed the individual of the need to elect or of whether the grievance has raised an allegation of discrimination.

29 C.F.R. § 1614.301(a) (emphasis added). Because Fernandez elected to proceed with the negotiated grievance procedure in the first instance, his EEO complaint filed on November 15, 2001 was properly dismissed inasmuch as arbitration of the same matter already had been invoked.

Although Fernandez now attempts to avoid the preclusive effect of 5 U.S.C. § 7121(d) by arguing that the NTEU invoked the negotiated grievance procedure without notifying him, that objection is not properly before us inasmuch as it is being raised for the first time on appeal. In any event, even assuming that Fernandez was unaware of the NTEU's September 7, 2001 letter requesting formal dispute resolution, the Record reveals that Fernandez was notified of this fact in the December 13, 2001 correspondence dismissing his EEO complaint on the basis of the ongoing grievance procedure and that he subsequently supported the NTEU's role in the procedure by specifically designating Talarico as his bargaining representative. Moreover, nothing in the Record demonstrates that Fernandez ever requested that the NTEU cease negotiations.

Nevertheless, when Fernandez rejected a proposed settlement that the NTEU viewed to be reasonable, the union abandoned his grievance by unilaterally withdrawing from arbitration. Therefore, the issue presented on this appeal is what, if any, avenue of relief was available to Fernandez *after* the NTEU withdrew from arbitration.

### C. *Fernandez's Right to Appeal*

Because we have concluded that Fernandez pursued a pure discrimination claim cognizable in the EEOC, we reject the Department's argument that Fernandez failed to exhaust his administrative remedies by not appealing to the MSPB. We also reject the Department's strained reading of § 7121(d) as barring an employee from seeking review of a final arbitration decision in the EEOC in all instances. Under § 7121(d),

[s]election of the negotiated procedure in no manner prejudices the right of an aggrieved employee to request the Merit Systems Protection Board to review the final decision pursuant to [5 U.S.C. § 7702] of this title in the case of any personnel action that could have been appealed to the Board, or, where applicable, to request the Equal Employment Opportunity Commission to review a final decision *in any other matter* involving a complaint of discrimination of the type prohibited by any law administered by the Equal Employment Opportunity Commission.

(emphasis added).

■ The Department contends, for the first time on appeal, that because Fernandez is pursuing the "same matter"—discrimination underlying the Department's refusal to reinstate him—that he previously pursued in his grievance, " § 7121(d) does not authorize him to seek review before the EEOC." The Department argues that:

[I]f Congress had intended the EEOC to review grievances, it could have provided in § 7121(d) that an employee has the right to request the EEOC to review "the final decision" of the grievance process (like it did with respect to the MSPB) or "the matter" that was raised in the grievance process. Instead, Congress wrote that such an employee has the right to request the EEOC to review "any *other* matter" involving a complaint of unlawful employment discrimination.

The Department therefore interprets "any other matter" to mean any other act of discrimination not previously alleged in the negotiated grievance process.

The term "any other matter" in § 7121(d), however, refers to the nature of the employee's claim, not to whether the claim was raised previously. Where the employee raises a mixed claim, an appeal

from an arbitrator's decision lies in the MSPB. *See Johnson,* 996 F.2d at 401 ("[S]ection 7121(d)'s preservation of the mixed claim employee's right to appeal to the MSPB created the bridge by which the employee following the negotiated procedure could revert to the statutory path and seek judicial review."). Where, as here, the employee raises a pure discrimination claim, an appeal from an arbitrator's decision lies in the EEOC. The provision in § 7121(d) allowing an employee to request the EEOC to review a final decision "in any other matter involving a complaint of discrimination" therefore refers to cases of pure discrimination as opposed to the cases within the jurisdiction of the MSPB to review. *See* 29 C.F.R. § 1614.401(d) ("A grievant may appeal the final decision of the ... arbitrator ... on the grievance [to the EEOC] when an issue of employment discrimination was raised in a negotiated grievance procedure that permits such issues to be raised. A grievant may not appeal under this part, however, when the matter initially raised in the negotiated grievance procedure is still ongoing in that process, is in arbitration, [or] *is appealable to the MSPB.*"(emphasis added)). Accordingly, we read "any other matter" to refer to pure employment discrimination claims as distinguished from the other types of claims involving prohibited personnel practices cognizable by the MSPB.

Although Fernandez elected to proceed along the negotiated grievance route, the NTEU chose not to go forward with arbitration. We note that only parties to the collective bargaining agreement may pursue binding arbitration of a grievance not otherwise satisfactorily settled. *See* 5 U.S.C. § 7121(b)(1)(C)(iii). The NTEU both submitted Fernandez's grievance to arbitration and withdrew it, and the Record does not reveal that Fernandez was provided with an opportunity to represent

himself or that he had the right to do so. Moreover, Fernandez could not be compelled to accede to a settlement agreement that was unacceptable to him. The failure by Fernandez to exhaust administrative remedies available under the CSRA was therefore attributable to the NTEU's actions in preventing a "final decision" from which he could have otherwise appealed. 5 U.S.C. § 7121(d). Since the CSRA left Fernandez with no avenue of relief after the NTEU unilaterally withdrew from arbitration, the District Court should consider this fact on remand in determining whether the failure to exhaust EEOC remedies can be excused.

## IV. *Equitable Relief*

 Because Fernandez's failure to exhaust his administrative remedies is not a jurisdictional defect, it is subject to equitable defenses. We have previously held in the employment discrimination context that "the exhaustion requirement, while weighty, is not jurisdictional." *Boos v. Runyon,* 201 F.3d 178, 182 (2d Cir.2000). Thus, "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); *see Paese v. Hartford Life Accident Ins. Co.,* 449 F.3d 435, 444 (2d Cir.2006). Moreover, exhaustion of administrative remedies is not required if adequate remedies are not reasonably available. *J.G. by Mrs. G. v. Bd. of Educ. of Rochester City Sch. Dist.,* 830 F.2d 444, 447 (2d Cir.1987). Thus, courts may, in their discretion, waive administrative exhaustion requirements under circumstances where the administrative remedy is inadequate because the agency cannot provide effective relief. For instance, administrative remedies

need not be pursued if "(a) '[the agency] lacks institutional competence to resolve the particular type of issue presented, such as the constitutionality of a statute'; (b) the challenge is to 'the adequacy of the agency procedure itself'; or (c) the agency 'lack[s] authority to grant the type of relief requested.'" *Bastek v. Fed. Crop Ins. Corp.,* 145 F.3d 90, 94 n. 4 (2d Cir.1998) (quoting *McCarthy v. Madigan,* 503 U.S. 140, 146–48, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992)).

In dismissing the Complaint, the District Court declined to apply equitable principles to excuse Fernandez's failure to exhaust administrative remedies on the grounds that:

> Fernandez has not shown ... that he acted with reasonable diligence, [ ]or that there are extraordinary circumstances at play. Fernandez apparently believes that he was discriminated against in the grievance process, that the settlement offer was a "trap door," and that the union was not acting as a good[-]faith negotiator on his behalf. Fernandez was told, however, on October 24, 2001, that the filing of the NTEU grievance indicated that he elected to pursue the matter through the non-EEO process, and that he could contact an EEO counselor within 45 days of completion of the grievance process.... Additionally, after filing his EEO[ ] complaint, Fernandez was informed that though his complaint was being dismissed because of his election, the final decision on the grievance may be appealed to the EEOC.... Thus, Fernandez had clear notice of the procedures which he must follow, and he has not established any "extraordinary circumstances" that prevented him from following them. Likewise, Fernandez has not identified any factor that would warrant waiver of the exhaustion re-

quirement. Accordingly, I decline to apply these equitable doctrines to this case.

*Fernandez v. Ridge*, 2004 WL 3088664, at *7. Significantly, the District Court's determination is based on the assumption that Fernandez could appeal "the final decision on the grievance" to the EEOC under the circumstances. There simply was no "completion of the grievance process," and therefore no final decision to be appealed, and the District Court erred in assuming otherwise. The court also erred in not considering whether Fernandez's application for relief in the EEOC after the NTEU's withdrawal from arbitration satisfied the exhaustion requirement.

Although Fernandez was required to appeal to the EEOC within 30 days of the final decision in arbitration, the possibility of a final decision was foreclosed by the NTEU's unilateral withdrawal. Thus, the EEOC had no final decision before it to review. As the EEOC has itself recognized, "the Commission only has authority [to] review discrimination claims where there has been a final decision issued by . . . an arbitrator." E.E.O.C. Dec. 01A40558, 2004 WL 717088 at *1 (dismissing grievant's appeal as premature in the absence of a final decision issued by the arbitrator). Fernandez alleges that he contacted the EEOC after the NTEU withdrew from arbitration and was told "there was no way that you could go back into the EEOC because you already have acted at one time." Fernandez further alleges that he "returned to the EEOC in New York to request an updated right to su[e] letter . . . but the EEOC said that [he] did[ not] need it."

Mindful that this Court must, on this Rule 12(b)(6) motion to dismiss, assume the truth of all well-pleaded factual allegations and draw all reasonable inferences in favor of Fernandez, we cannot say, at this early stage in litigation, that it appears beyond doubt that Fernandez can prove no set of facts in support of his claim which would entitle him to relief. *See Conley*, 355 U.S. at 45–46, 78 S.Ct. 99. Accordingly, a remand to the District Court to consider whether equitable principles excused Fernandez's failure to exhaust his administrative remedies is in order. Factors which may be considered by the District Court include, but are not limited to, the extent of the role Fernandez was entitled to play in the negotiated grievance process, the absence of a final decision by the arbitrator and its effect on the EEOC's authority to grant relief, the reasonableness of the proposed settlement agreement, the reasonableness of Fernandez's rejection of the settlement, and the allegations by Fernandez that he sought relief in the EEOC after the NTEU withdrew from arbitration.

On summary judgment or after trial on remand, it may well appear to the District Court, depending on the totality of the circumstances, that the NTEU's abandonment of Fernandez's claim and his consequent inability to seek EEOC review of a final decision constituted equitable considerations sufficient to justify failure to exhaust in this case. *See, e.g., Pietras v. Bd. of Fire Comm'rs of Farmingville Fire Dist.*, 180 F.3d 468, 474 (2d Cir.1999) (holding that the district court acted within its discretion by excusing absence of notice-of-right-to-sue letter from EEOC where plaintiff made diligent effort to obtain notice-of-right-to-sue letter from EEOC and was denied one on erroneous basis that she was not an employee). Whatever the final result, our expectation is that the District Court will fairly consider all of the relevant facts in making this determination.

## CONCLUSION

■ To summarize: The unique circumstances of this case are not specifically

addressed by the CSRA's statutory scheme. Although Fernandez irrevocably elected to pursue his pure discrimination case under the negotiated procedure—a choice which prevented him from pursuing the statutory process in the first instance—his grievance was withdrawn without his consent before a final decision in arbitration could be given. An appeal from the result of arbitration thus was foreclosed. Given Fernandez's application for relief from the EEOC following the NTEU's withdrawal from arbitration, however, we conclude that the District Court should consider whether equitable considerations excused his failure to exhaust EEOC remedies. In light of the foregoing, the judgment of the district court is vacated, and the matter is remanded for further proceedings consistent with this opinion.